KESTENBAUM EISNER & GORIN LLP
ALAN EISNER, State Bar # 127119
14401 Sylvan Street, Suite 112
Van Nuys, CA 91401
Phone: (818) 781-1570
Fax: (818) 781-5033
Email: ae@keglawyers.com

Attorney for Defendant
JUAN GIL

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>ARMANDO BARAJAS, et al.,<br>JUAN GIL (2)<br>Defendant. | ) | Case No.: 2:10-CR-00351-JHN-02<br><br>DEFENDANT JUAN GIL'S MOTION TO DISMISS INDICTMENT BASED ON LACK OF JURISDICTION AND RELATED GROUNDS; POINTS AND AUTHORITIES<br><br>Hearing Date: September 7, 2011<br>Hearing Time: 2:00 p.m. |

TO: UNITED STATES ATTORNEY ANDRE BIROTTE, JR. AND ASSISTANT UNITED STATES ATTORNEY REEMA EL-AMAMY and all interested parties:

PLEASE TAKE NOTICE that on September 7, 2011, at 2:00 p.m., Defendant Juan Gil will bring on for hearing the following motion.

**MOTION**

Defendant, Juan Gil, by and through his counsel, moves this Honorable Court for an order dismissing the indictment due to lack of subject matter jurisdiction and because the indictment is void for vagueness.

This motion is based on the attached Memorandum of Points and Authorities, the indictment, all files in this case and all evidence and/or argument which may be presented to this Court prior to a ruling on this motion.

Respectfully submitted,

KESTENBAUM EISNER & GORIN LLP

Dated: July 30, 2011

/s/ *ALAN EISNER*

ALAN EISNER
Attorney for Defendant
JUAN GIL

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**RELEVANT STATEMENT OF FACTS**

Juan Gil is charged as defendant number 2 in an eighty-one page indictment entitled United States v. Barajas. Mr. Gil is charged in Count One with a violation of Title 18 U.S.C. §1962(d): Racketeer Influenced and Corrupt Organizations Conspiracy; in Count 2 with a violation of Title 18 U.S.C. §1962(c): Racketeer Influenced and Corrupt Organizations; and in Count 5 with a violation of Title 21 U.S.C. §846: Conspiracy to Distribute and to Possess with Intent to Distribute Methamphetamine and Heroin.

General Allegations in Counts 1, 2 and 5.

Count 1 alleges that Mr. Gil was one of 21 full members of the Black Angels gang, an organization engaged in, among other things, murder and other serious street crimes. Count 1 also alleges that Mr. Gil is one of at least four Mexican Mafia members in the Black Angels gang, and further alleges that this organization operated in the Central District of California. Count 1 further alleges that the Black Angels (and its leadership, members and associates) constituted an “enterprise”, that is, a group of individuals associated in fact and that the enterprise engaged in, and its activities affected, interstate and foreign commerce. Further, it is alleged, the enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

Count 2 alleges that Mr. Gil and others were employed by the Black Angels criminal enterprise and participated in a pattern of racketeering activity, specifically, 13 racketeering acts as follows: 1. Conspiracy to Distribute Narcotics, 2. Conspiracy to commit Extortion; 3. Extortion, 4. Extortion, 5. Armed Robbery; 6. Distribution of Methametamine; 7. Possession with Intent to Distribute Methametamine; 8. Extortion; 9. Distribution of Methametamine; 10. Possession with Intent to Distribute Methametamine;

11. Extortion; 12. Possession with Intent to Distribute Methametamine; 13. Possession with Intent to Distribute Methametamine.

Count 5 alleges that Mr. Gil, and others, conspired to distribute narcotics during the relevant time period.

Overt Acts and Means Allegations

Mr. Gil is named in 6 of the 186 overt acts alleged in Count 1, repeated here verbatim: (1) On March 10, 2007, defendant J. GIL[1], at United States Penitentiary in Victorville, California, received multiple balloons containing approximately 3.8 grams of heroin from defendant V. GIL that defendant J. GIL then swallowed in attempt to conceal the narcotics from prison officials. (Overt act 15); (2) On April 24, 2008, defendant J. GIL requested that defendant DIAZ broker a firearms transaction on J. GIL's behalf while J. GIL was in custody. (Overt act 17); (3) On May 3, 2008, defendant DIAZ reported to defendant J. GIL that DIAZ had obtained the firearms, including a .45 caliber handgun, and a semi-automatic rifle known as a "mini-14," and stated that DIAZ would send J. GIL the proceeds from the firearms sales. (Overt act 18); (4) On June 30, 2008, defendant J. GIL who was incarcerated, instructed defendant DIAZ to place money on J. GIL's books, and to give some money to defendant V. GIL. (Overt act 19); (5) On August 7, 2009, J. GIL, who was incarcerated at the time, told V. GIL to tell other members of the Black Angels and its associates that they should not communicate about gang business over the telephone, as J. GIL had just read about another case about law enforcement building a prosecution based on recorded telephone calls. (Overt act 105); (6) On August 22, 2009, defendant V. GIL told defendant J. GIL, who was incarcerated at the time, that V. GIL had been at a party and had been assaulted by and 18 year old male, and J. GIL instructed V. GIL to assemble some of the younger members or associates of the Black Angels gang to take care of the problem. (Overt act 109)

---

[1] The indictment identifies Juan Gil as J. GIL to distinguish him from V. GIL, who is his wife, co-defendant Virginia Gil.

The indictment further alleges that Mr. Gil and others directed the activities of the Black Angels gang and associates, specifically insofar as those activities involved the distribution of narcotics, the collection and distribution of "taxed" drug proceeds, and the commission of crimes of violence. [Indictment pg. 11; Count 1, MEANS #1.]

The indictment further alleges that Mr. Gil and others would permit narcotics traffickers to distribute narcotics in the geographic area controlled by the Black Angels gang in return for a percentage of the narcotic proceeds that were sole in the areas controlled by the Black Angels gang. [Indictment pg. 11; Count 1, MEANS #3.]

The indictment further alleges that Mr. Gil and others would obtain firearms and other dangerous weapons for Black Angeles gang members, to be used to enforce the authority of the Black Angels gang, to maintain the Black Angels members and associates' ability to engage3 in drug trafficking within the neighborhoods controlled by the gang, and to exclude others from drug trafficking in the neighborhoods controlled by the Black Angeles gang. [Indictment pg. 12; Count 1, MEANS #4.]

The indictment further alleges that Mr. Gil would distribute narcotics in prison and in the territory controlled by the Black Angels gang. [Indictment pg. 12; Count 1, MEANS #7.]

The indictment further alleges that Mr. Gil would assist Black Angels gang members and associates in the commission of violent crimes and narcotics trafficking by providing access to telephones to be used for criminal activity, conveying information regarding the criminal activities of the Black Angels gang to incarcerated Black Angels gang members and members of the Mexican Mafia, and concealing contraband held by the gang to avoid the contraband's detection by law enforcement. [Indictment pg. 12-13; Count 1, MEANS #8.]

The indictment further alleges that Mr. Gil would communicate with members of the Black Angels gang and their associates to notify them of the presence of law enforcement in the area controlled by the gang and report on recent arrests, search warrants, and other law enforcement activity conducted against members of the Black

Angels gang, or narcotics traffickers making extortion payments to the gang. [Indictment pg. 13; Count 1, MEANS #9.]

As to Count 5, the drug conspiracy charge, the government alleges that Mr. Gil conspired to distribute quantities of methamphetamine and heroin sufficient satisfy the mandatory minimum punishments under 841(b)(1)(A)(viii); (B)(viii); (A)(i) and (B)(i). The indictment then repeats the MEANS section verbatim from count 1, into count 5, and then incorporates all 186 overt acts from count 1into count 5. In other words, the allegations in count 5 give no further factual support than the MEANS and overt acts alleged count 1.

**II.**

**ARGUMENT**

**A. MOTIONS TO DISMISS ARE PROPERLY FILED PRIOR TO TRIAL.**

A motion to dismiss an indictment may properly be filed and considered pretrial pursuant to Federal Rule of Criminal Procedure 12(b). Federal Rule of Criminal Procedure 12(b)(2) states that a party may raise by pretrial motion any defense, objection, or request that the Court can determine without a trial of the general issue. Rule 12(b)(3) delineates the motions which must be made prior to trial. This list includes, among others, a motion alleging a defect in the institution of the prosecution; a motion alleging a defect in the indictment or information, including a claim that the indictment fails to invoke the court's jurisdiction or to state an offense.

Pursuant to Fed. R. Crim. P. 12(b)(3), defendants waive all but jurisdictional claims of error unless they raise their claims before trial. *United States v. Smith*, 866 F.2d 1092, 1098 (9th Cir. 1989). Courts have defined jurisdictional claims as constitutional claims 'that challenge the right of the state to hale the defendant into court.' *United States v. Montilla*, 870 F.2d 549, 552 (9th Cir. 1989).

**B. MOTIONS RAISING QUESTIONS OF LAW MUST BE FILED PRIOR TO TRIAL.**

The motion herein challenges the filing of the indictment on subject matter jurisdiction and vagueness.

In addressing a pretrial motion, a court generally may decide questions of law rather than fact. *United States v. Shortt Accountancy Corp*., 785 F.2d 1448, 1452 (9th Cir.), cert denied 478 U.S. 1007 (1986). The essential elements of a crime are issues of fact that must be submitted to a jury and proved beyond a reasonable doubt. *United States v. Gaudin*, 515 U.S. 506, 511 (1995). When there is a mixed question of law and fact, these questions have "typically been resolved by juries." *Gaudin*, 515 U.S. at 512.

Herein, the challenged indictment raises a question of law rather than fact. Thus, this motion must be filed pretrial.

**C. EVEN IF THIS COURT IS REQUIRED TO MAKE FINDINGS OF FACT, THIS MOTION IS CAPABLE OF DETERMINATION PRETRIAL**.

Typically a pretrial motion is generally "capable of determination" before trial if it involves questions of law rather than fact. *United States v. Shortt Accountancy Corp*, 785 F.2d 1448, 1452 (9th Cir. 1986), cert denied, 478 U.S. 1007 (1986). A district judge, however, is permitted to make findings of fact necessary to decide the questions of law presented by pre trial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact. *Shortt*, 785 F.2d at 1452.

Because the ultimate finder of fact is concerned with the general issue of guilt, a motion requiring factual determinations may be decided before trial if "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *United States v. Covington*, 395 U.S. 57, 60, (1969).

Applying this case law to the current case highlights that the issue herein can be determined prior to trial. The issue does not relate to the general issue of guilt. The fact

that this Court might be required to make some factual determinations is not fatal to a pretrial determination as long as this court's findings do not invade the province of the jury.

Here, the factual determination, if any, would be whether an enterprise existed and if so, whether Mr. Gil, or others who may join in this motion, participated in it. These considerations are not general issues for the jury. Thus, this motion must be filed pretrial.

**D. A MOTION TO DISMISS DUE TO LACK OF FEDERAL JURISDICTION MUST BE FILED PRETRIAL**.

A district court's assumption of jurisdiction is a question of law, which is reviewed de novo. See *United States v. Yacoubian*, 24 F.3d 1, 3 (9th Cir. 1994). Federal courts have exclusive jurisdiction of offenses against the laws of the United States pursuant to 18 U.S.C. §3231. *United States v. Sitton*, 968 F.2d 947, 953 (9th Cir. 1992), cert denied, 507 U.S. 929 (1993). If RICO does not apply as to Mr. Gil, however, all that is left is an allegation that he received 3.8 grams of heroin while serving time in federal custody. (In fact, Mr. Gil has already pled guilty to the federal offense of *possession* of a prohibited object while an inmate in federal prison, in United States v. Juan Gil, ED CR 08-00057-VAP)

While at first blush, it might appear that this motion is more properly filed after the beginning of the trial, motions challenging the indictment have been denied if not filed prior to trial. In *United States v. Ramirez*, 324 F.3d 1225 (11th Cir.), *cert denied*, 540 U.S. 881 (2003), the defendants were convicted of witness tampering. After opening statements, defendants moved for a judgment of acquittal asserting that the indictment failed to charge the necessary elements of first degree murder and was time-barred. The district court construed the motion as one under Fed.R.Crim. P. 12(b)(2) and held that the motion was untimely and as such it was denied. On appeal, that court upheld the district court finding that the defendants waived their right to raise that defense by failing to raise it in a pretrial motion.

*Ramirez* and Rule 12 make clear that the primary issue in determining the timing of the filing of a motion to dismiss is whether it is capable of determining the motion prior to trial and whether it is segregatible from the general trial issue. Because this motion is segregatible from the general trial issue and it is capable of being determined prior to trial, this motion is required to be filed prior to trial.

**E. THE INDICTMENT HEREIN SHOULD BE DISMISSED BECAUSE IT IS VOID FOR VAGUENESS.**

The criteria for evaluating a challenged indictment are, first, whether the indictment "contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, secondly, in case any other proceedings are taken against him for a similar offence, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." *Russell v. United States*, 369 U.S. 749, 763 64, (1962).

The indictment charged in this case is based on a statute referred to as Chapter 96- Racketeer Influenced and Corrupt Organizations (RICO). See Title 18 U.S.C. §1961 and §1962. Mr. Gil is charged with Title 18 U.S.C. §1961 and §1962(c) which makes it unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

The indictment alleges various means by which the alleged conspiracy was to be accomplished, including allegations of illegal possession of drugs by various co-defendants, possession of illegal firearms and possession of extortionate funds.

As to Mr. Gil, however, the detail in the allegations, as noted above, is minimal. The only allegation of an actual violation of law is Overt Act 15 which alleges that on March 10, 2007, Mr. Gil received 3.8 grams of heroin while serving time in federal custody.

These charges, do not properly apprise Mr. Gil of the charges he must meet at the trial-particularly with respect to the RICO conspiracy. Rather, the indictment here merely substantially tracks the convoluted language of the RICO statute.

"A statute may be void for vagueness if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes." *United States v. Gilbert*, 813 F.2d 1523, 1530 (9th Cir.), *cert denied*, 484 U.S. 860 (1987). In this case, because the charges in the indictment herein merely track the statute, it is vague as to Mr. Gil since people of ordinary intelligence would not understand the criminal conduct which is proscribed. As such the indictment should be dismissed due to vagueness.

**F. THE INDICTMENT SHOULD BE DISMISSED DUE TO AN INSUFFICIENT SHOWING OF FEDERAL JURISDICTION.**

**1. The Government's Description of the Enterprise Fails to Provide Federal Jurisdiction.**

Mr. Gil agrees with the dissent by Justice Stevens and joined by Justice Breyer in *Boyle v. United States*, 129 S.Ct. 2237, 2247 (2009) wherein the justices stated that the structure of the enterprise must bear a resemblance to "business-like entities". *Id*. at 2243.

Because the alleged enterprise in this case, the Black Angels gang is not described by the Government as a "business-like entity", this motion to dismiss must be granted since without an enterprise there is no federal jurisdiction.

Mr. Gil recognizes that *Boyle* rejects the dissent's requirement that the enterprise must resemble a business-like entity that this Court cannot overrule the Supreme Court precedent. Accordingly, Mr. Gil makes this request and submits on this argument.

**2. The Government Has Failed to Allege Sufficient Facts for the Assertion of Federal Jurisdiction.**

The Government's allegation and/or basis of federal jurisdiction in this case is that Juan Gil allegedly received drugs while serving time in federal custody as part of a criminal enterprise in violation of 18 U.S.C. §1961 and §1962. Receiving drugs in a

federal prison is not the type of conduct that the RICO statute *per se* was designed to prohibit. What makes this a federal case is that the Government alleged that Mr. Gil took such action as a member/participant of the alleged enterprise.

For federal jurisdiction to attach, the Government must allege and prove the existence of a Criminal Conspiracy. The elements of a violation of §1962(c) require: (1) conduct (2) of a criminal enterprise (3) through a pattern (4) of racketeering activity. *Sedima, SP RL v. Imrex Co.*, 473 U.S. 479, 496 (1985).

Further, the Government must allege, as it has herein, that Mr. Gil associated with an enterprise which engaged in, or the activities of which affected, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. *United States v. Shryock*, 342 F.3d 948, 986 (9th Cir. 2003), *cert denied*, 541 U.S. 965 (2004); See 18 U.S.C. §1962(c).

An enterprise was described as "any union or group of individuals associated in fact". *United States v. Turkette*, 452 U.S. 576, 583 (1981).

To establish the existence of an association in fact enterprise, the Government must allege (1) persons associated for the "common purpose of engaging in a course of conduct," (2) "an ongoing organization, formal or informal," and (3) that the associates functioned as a "continuing unit." *Boyle v. United States*, 129 S.Ct. 2237, 2239 (2009); *Odom v. Microsoft Corp*, 486 F.3d 541, 552 (9th Cir. 2007)(en banc);.

Implicit in the concept of a criminal enterprise is that the organization have certain characteristics. For instance, a participant in a criminal enterprise must take part in the "operation and management" of the enterprise and must have some part in directing those affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 183-185 (1993). Further, conduct connotes some degree of direction over the affairs of the enterprise. *Reves*, *id*. at 178-79. Liability under 1962(c) is not limited to upper management but the actor must be an individual employed by or associated with [the] enterprise." *Reves*, 507 U.S. at 184.

While no elaborate showing of hierarchy is required to prove a criminal enterprise,

such as " 'professionalism and sophistication of organization,' 'diversity and complexity of crimes,' 'membership dues, rules and regulations,' 'uncharged or additional crimes aside from predicate acts,' an 'internal discipline mechanism,' 'regular meetings,' an enterprise 'name,'' and 'induction or initiation ceremonies and rituals...'" a criminal enterprise must have enough organization to make decisions for the group, as well as maintain its own existence long enough to pursue a course of conduct. *Boyle v. United States*, 129 S.Ct. 2237, 2245 (2009).

Here, the indictment makes sweeping allegations that an enterprise existed and that Mr. Gil was part of that enterprise. As noted above, however, the prosecution has failed to allege conduct by Juan Gil that constituted a pattern of racketeering activity. In addition, it has failed to allege facts showing that Juan Gil was part of an organization that qualified as an enterprise. Further, it has failed to allege facts that any actions taken by Mr. Gil were for the enterprise's benefit, at its direction or that Mr. Gil was involved in the operation or management of such enterprise. Finally, the indictment failed to allege facts which would show that the alleged enterprise was organized sufficiently to make decisions for the group or that the alleged group could maintain its existence long enough to pursue a course of conduct.

## III.

## CONCLUSION

Based on the foregoing, it is respectfully requested that this motion to dismiss for lack of jurisdiction and for vagueness be granted.

Respectfully submitted,

KESTENBAUM EISNER & GORIN LLP

Dated: July 30, 2011

/s/ *ALAN EISNER*

ALAN EISNER
Attorney for Defendant
JUAN GIL