ALAN EISNER, State Bar #127119
KESTENBAUM EISNER & GORIN LLP
14401 Sylvan Street, Suite 112
Van Nuys, CA 91401
Phone:       (818) 781-1570
Fax:         (818) 781-5033
Email:       ae@keglawyers.com

Attorney for Defendant
JUAN GIL

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Case No.: 2:10-CR-00351-ODW-02 |
| Plaintiff, ) | **MOTION TO SUPPRESS WIRETAP EVIDENCE SIEZED FROM UNLAWFUL DELEGATION OF WARRANT EXECUTION TO NON-LAW ENFORCEMENT, UNTRAINED, UNSUPERVISED CIVILIANS FOR HIRE** |
| v. ) | |
| ARMANDO BARAJAS, et al., ) JUAN GIL (2) ) | |
| Defendant. ) | Hearing Date: July 30, 2012 Hearing Time: 10:00 a.m. |

TO THE UNITED STATES ATTORNEY ANDRE BIROTTE AND ASSISTANT

UNITED STATES ATTORNEY REEMA EL-AMAMY and all interested parties:

**PLEASE TAKE NOTICE** that on date or as soon thereafter as this may be heard, in the Courtroom of the Honorable Otis D. Wright, II, defendant Juan Gil by and through his attorney Alan Eisner will and hereby do move to suppress any and all evidence seized or gathered, directly or indirectly, as a result of unlawful electronic eavesdropping and surveillance.

This motion is made on the grounds that wiretap evidence was seized from unlawful delegation of warrant execution to non-law enforcement, untrained, unsupervised civilians for hire.

This motion is based on this notice of motion, the attached memorandum of points

1

1 and authorities, all files and records in this case, exhibits, and all evidence to be presented
2 at the time and place herein scheduled for the making of this motion.

                                  Respectfully submitted,

                                  KESTENBAUM EISNER & GORIN LLP

Dated: June 30, 2012                      */S/ ALAN EISNER*

                                  ALAN EISNER
                                  Attorney for Defendant
                                  JUAN GIL

# MOTION TO SUPPRESS WIRETAP EVIDENCE SEIZED FROM UNLAWFUL DELEGATION OF WARRANT EXECUTION TO NON-LAW ENFORCEMENT, UNTRAINED, UNSUPERVISED CIVILIANS FOR HIRE

## INTRODUCTION

Over the course of nearly a year, the government seized hundreds of telephone conversations between the defendants and others through a series of wiretaps where it delegated the sensitive task of executing the electronic searches to non-law enforcement civilian contractors without any apparent need or justification for doing so. Defendants hereby move to suppress the evidence gathered through those wiretaps as the product of an unconstitutional search and seizure.

## STATEMENT OF FACTS

In February 2009, the government sought a wiretap on the telephones of Marco Antonio Torres-Cruz, whom it knew at the time as "Alex," and Jose Lopez, a person suspected to be Torres-Cruz's drug supplier. Bates 002-03, 095. The government promptly expanded its wiretapping activity to intercept conversations over various telephones used by defendants Torres-Cruz, David Navarro, and Armando Barajas, and others. The wiretapping activity initially sought to intercept conversations of 19 different specific individuals, a number that steadily progressed until the last wiretap when the government tripled the number of targets to 58 different named individuals. In addition to the specifically named individuals, each wiretap also sought to intercept the telephone conversations of "others known, unknown or unidentified" as being among those included identified as "the Target Subjects." E.g. Bates 005, 097, 121, 225, 267, 352, 390, 485, 525, 640, 711, 830, 876, 981.[1]

The government sought wiretapping authorization because it anticipated that some

---

[1] See also Bates 026, 145, 292, 414, 544, 728, 893 (describing Target Subjects as including "and others yet unknown").

of the conversations might relate to "the acquisition and distribution of controlled substances and money." Bates 006, 098, 122, 226, 268, 353, 391, 487, 525, 640, 711, 831, 876, 981.[2] However, law enforcement also recognized that others besides the specifically named individuals would have access to, and use, the targeted telephones. Bates 091, 218, 342-43, 475, 626, 815, 964. Indeed, the applications and court orders expressly anticipated the likelihood that wiretaps would capture conversations that were entirely unrelated to the alleged conduct being investigated. Bates 016, 090-91, 106-07, 132, 218, 234, 278, 342, 362, 401, 474, 495, 535, 626, 649, 721, 815, 839, 886, 964, 990 (law enforcement anticipated need to minimize interception of conversations outside the scope of the wiretap orders). The government also anticipated that conversations and communications would take place over the targeted telephones that were "not otherwise subject to interception pursuant to this Order,"[3] either because none of the target subjects was participating in the conversation,[4] the persons on the line did not include persons identified as co-conspirators,[5] the subject matter of the conversation was not criminal,[6] the subject matter of the conversation was unrelated to the investigation or outside the scope of the interception order,[7] or no less importantly, the conversation itself was entitled to a claim of privilege.[8]

---

[2] See also Bates 028-29, 147-48, 294-95, 416, 551, 736-37, 902-03.

[3] Bates 016, 132, 278, 401, 535, 721, 886.

[4] Bates 092, 219, 344, 476, 626-27, 816, 965.

[5] Bates 092, 219, 344, 476, 626-27, 816, 965.

[6] Bates 016, 091, 092, 107, 132, 218, 219, 234, 278, 343, 344, 362, 401, 475, 476, 495, 535, 626-27, 649, 721, 815, 816, 839, 886, 964, 965, 990.

[7] Bates 016, 091, 092, 107, 132, 218, 219, 234, 278, 343, 344, 362, 401, 475, 476, 495, 535, 626, 626-27, 649, 721, 815, 816, 839, 886, 964, 965, 990.

[8] Bates 016, 091, 092, 107, 132, 219, 234, 278, 344, 362, 401, 476, 495, 535, 626-27,

4

Each of the orders contains identical language regarding the interception of communications from the targeted telephones. Each order authorized law enforcement to "intercept wire or oral communications, and contemporaneously received or retrieved voice mail, to and from, and any background conversations intercepted in the vicinity of" the targeted telephones. Bates 094-95, 100, 222-23, 227-28, 349-50, 355, 482-83, 488, 636-37, 642, 826-27, 832, 977-78, 983.[9] Each order further provided that "the communications of the Target Subjects, and others known, unknown, or unidentified are to be intercepted." Bates 100, 228, 355, 488, 642, 833, 983.[10] None of the orders otherwise limited the nature of the scope of communications on the targeted telephones that law enforcement was permitted to listen to and seize. *Id*.

Nonetheless, ostensibly under the authority of 18 U.S.C. § 2518(5), instead of having the delicate task of intercepting, listening to, and selecting the conversations to be seized performed by professional, trained law enforcement officers, the government sought and obtained permission to delegate those tasks to "individuals operating under a contract with the government." Bates 008, 015, 100, 106, 124, 131, 227, 234, 270, 277, 355, 361, 394, 401, 488, 494-95, 527, 534, 642, 648-49, 714, 720-21, 832, 839, 878, 885, 983, 989.

In support of the applications, the affiant did not suggest, and the court orders did not find: (•) any need for the search and seizure task to be delegated to private civilian contractors, (•) the nature of any conditions that would prompt, trigger or justify such a delegation, (•) any minimum standards of training or qualification for any civilian contractors, (•) the nature or extent of any law enforcement supervision of the civilian contractors, (•) any circumstances suggesting a government need for special skills or

---

649, 721, 816, 839, 886, 965, 990.

[9] See also (applications) Bates 002, 008-09, 118, 124, 264, 270-71, 387, 394, 521, 527-28, 707, 714, 872, 878-79.

[10] See also (applications) Bates 005, 009, 121, 125, 267, 271, 390, 394, 525, 528, 711,

5

knowledge not possessed by law enforcement, (•) any other showing of need before delegating tasks to the civilian contractors, (•) or any specification of the nature or type of supervision to be provided to the civilian contractors asked to execute the searches and seizures of otherwise private conversations.

## ARGUMENT

"Though physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed, its broader spirit now shields private speech from unreasonable surveillance." *United States v. United States Dist. Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972). The Fourth Amendment regulates "not only the seizure of tangible items, but extends as well to the recording of oral statements." *Id.*, quoting *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The Court has reasoned that "the broad and unsuspected governmental incursions into conversational privacy which electronic surveillance entails necessitate the application of Fourth Amendment safeguards." *United States v. United States Dist. Court*, 407 U.S. at 313 (footnote omitted).

Even outside the context of wiretaps, "[t]he proceeding by search warrant is a drastic one and must be carefully circumscribed so as to prevent unauthorized invasions of the sanctity of a man's home and the privacies of life." *Berger v. New York*, 388 U.S. 41, 58, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967) (internal quotations omitted). When it comes to wiretapping, however, "drastic" is an understatement. "Few threats to liberty exist which are greater than that posed by the use of eavesdropping devices." *Berger*, 388 U.S. at 63. When drafting the initial wiretap act, Congress was keenly aware that, with a wiretapping device installed, "Every spoken word relating to each man's personal, marital, religious, political, or commercial concerns can be intercepted by an unseen auditor and turned against the speaker." S. REP. NO. 90-1097, at 38 (Apr. 29, 1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2154.

714, 876, 879.

The Fourth Amendment's prohibition of unreasonable searches and seizures extends not only to the initiation of searches but also to the manner in which searches are conducted. *United States v. Ramirez*, 523 U.S. 65, 71, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998) ("The general touchstone of reasonableness which governs Fourth Amendment analysis governs the method of execution of the warrant.") (citation omitted); *Dalia v. United States*, 441 U.S. 238, 257, 99 S.Ct. 1682, 60 L.Ed.2d 177 (1979) ("it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant – *subject of course to the general Fourth Amendment protection 'against unreasonable searches and seizures*.'") (footnote omitted; emphasis added).

**I.  The Wiretap Orders Are Facially Defective in Authorizing Law Enforcement to Delegate the Essential Law Enforcement Function of Executing the Search Warrant to Contractors Conducting the Search for Personal Gain and in the Absence of Any Compelling Reason Why the Search Could Not Be Executed by Law Enforcement Personnel**

"In executing a search warrant, government officials must ensure that the search is conducted in a way that minimizes unwarranted intrusions into an individual's privacy." *United States v. Sparks*, 265 F.3d 825, 831 (9th Cir. 2001), *overruled on other grounds*, *United States v. Grisel*, 488 F.3d 844 (9th Cir. 2007). Capitulating to law enforcement's request, Congress has permitted government agents to enlist civilian contractors to assist them in executing wiretaps. 18 U.S.C. § 2518(5). The "authority to '[approve] interception of wire or oral communications,' 18 U.S.C. §§ 2516(1), (2), [is] subject of course to constitutional limitations." *Dalia v. United States*, 441 U.S. 238, 250, 99 S.Ct. 1682, 60 L.Ed.2d 177 (1979). The Ninth Circuit has set forth a three-pronged test to determine the circumstances in which civilian participation in a search does not render a search and seizure unreasonable under the Fourth Amendment:

>First, the civilian's role must be to aid the efforts of the police. In other words, civilians cannot be present simply to further their own goals. *Wilson v. Layne*, 526 U.S. 603, 613-14, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (inviting media to 'ride along' on execution of warrant violates the defendant's Fourth Amendment rights). Second, the officer must be in need of assistance. Police cannot invite civilians to perform searches on a whim; there must be some reason why a law enforcement officer cannot himself conduct the search and some reason to believe that postponing the search until an officer is available might raise a safety risk. Third, the civilians must be limited to doing what the police had authority to do.

*Sparks*, 265 F.3d at 831-32.

Here, the wholesale delegation of authority to civilian contractors fails both the first and the second prong. As best as appears from the discovery, the civilian contractors had no reason to participate in the search other than that they were hired to do so. This incentive of personal remuneration by itself calls into question the independence and neutrality of the private monitors, who had an incentive to err on the side of seizure over privacy since the failure to seize conversations would inevitably lead to the termination of the wiretap and, therefore, the termination of their contract project. *Cf. Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927).

Even professional "prosecutors and policemen simply cannot be asked to maintain the requisite neutrality with regard to their own investigations – the 'competitive enterprise' that must rightly engage their single-minded attention." *Coolidge v. New Hampshire*, 403 U.S. 443, 450, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). It is all the more improbable to civilian individuals who have not sworn to uphold the law or duly and faithfully execute them can be expected to approach the execution of a search warrant with the same degree of professionalism as a trained officer or law enforcement agent.

Second, there is no suggestion that the FBI or DEA were "in need of assistance."

1 From all that appears from the discovery, there was *no* reason why the law enforcement
2 officers could not themselves perform the searches. There is no reason to believe that
3 law enforcement personnel were not available to conduct the electronic searches and
4 seizures nor any reason why the seizures could not be postponed until a law enforcement
5 officer was available. There is no suggestion that "safety risk" inspired delegation of the
6 search to persons other than professional law enforcement personnel.

7 The task of intercepting telephone conversations – no different than the execution
8 of a traditional search warrant – implicates significant, important privacy concerns calling
9 for matters of professional law enforcement judgment, not just the gut reaction of a hired
10 civilian contractor.

11 Once an issuing judge has granted permission for law enforcement to undertake
12 the highly intrusive activity to eavesdropping on private telephonic conversations, only
13 the monitors charged with carrying out the order can ensure protection of Title III's
14 equally important purpose of "protecting the privacy of wire and oral communications,"
15 S. Rep. No. 90-1097, at 38,[11] by following the strict minimization requirements of 18
16 U.S.C. § 2518. Only the monitors executing the order can effectively protect privacy by
17 deciding when *not* to listen to or record conversations that appear to go beyond the scope
18 of the investigation. Notably, unlike all the other safeguards contained in Title III, the
19 requirement that intercepting officers limit the scope of seizures is the only safeguard that
20 operates after the wiretap order has been issued.

21 The risk of "indiscriminate use of [eavesdropping by] law enforcement raises
22 grave constitutional questions under the Fourth and Fifth Amendments and imposes a
23 heavier responsibility on this Court in its supervision of the fairness of procedures."
24 Berger, 388 U.S. at 56. In short, the monitors' decision to minimize – or not to minimize
25 – interception of a particular conversation is the bulwark protection that there be "no

---

[11] *See also* S. REP. NO. 90-1097, at 46, *reprinted in* 1968 U.S.C.C.A.N. 2162 (under Berger, "Limitations on the officer executing the eavesdrop order which would [] prevent his searching unauthorized areas" are essential to constitutionality of eavesdropping).

9

greater invasion of privacy . . . than was necessary under the circumstances." *Berger*, 388 U.S. at 57.[12]

## II.    To The Extent the Seizures Were Delegated to Private Civilian Contractors Without a Compelling Reason, The Communications Seized Under the Wiretap Orders Were Unlawfully Intercepted

The Government has produced no evidence tending to establish that civilian contractors were subject to any degree of supervision by law enforcement in executing the wiretap warrants.  While "Section 2518(5) does not require the government to follow any specific protocol to properly supervise a wiretap," *United States v. Reed*, 575 F.3d 900, 918 (9th Cir. 2009), here, there is no indication that the government provided any supervision whatsoever.  The government, when applying for the wiretaps, made a host of representations to the issuing judge about how it would supervise and monitor the execution of the wiretaps.  Despite several informal and formal requests, the Government has provided *no* information to corroborate that it followed through on those representations.  In the event the court does not suppress the evidence collected through the wiretaps on the ground that the warrants were defective on their face, the defendants seek an evidentiary hearing at which to present evidence that the seizures were executed in a manner inconsistent with the Fourth Amendment.

///

///

---

[12] Because Congress's legislative power "may not be exercised in a way that violates other specific provisions of the Constitution." Saenz v. Roe, 526 U.S. 489, 508, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999), the statutory grant of permission to delegate wiretap searches to private contractors nonetheless violates the Fourth Amendment's protection against searches that are carried out in an unreasonable manner.  Lacking any justification for enlisting private civilian contractors to perform what is an essentially law enforcement function that law enforcement is fully capable of performing, the wiretap orders violated the constitution.

# CONCLUSION

For all the foregoing reasons, the motion should be granted.

Respectfully submitted,

KESTENBAUM EISNER & GORIN LLP

Dated: June 30, 2012         */S/ ALAN EISNER*

ALAN EISNER
Attorney for Defendant
JUAN GIL