ALAN EISNER, State Bar #127119
KESTENBAUM EISNER & GORIN LLP
14401 Sylvan Street, Suite 112
Van Nuys, CA 91401
Phone: (818) 781-1570
Fax: (818) 781-5033
Email: ae@keglawyers.com

Attorney for Defendant
JUAN GIL

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> ARMANDO BARAJAS, et al., ) <br> JUAN GIL (2) ) <br> Defendant. ) | Case No.: 2:10-CR-00351-ODW-02 <br><br> **NOTICE OF MOTION AND MOTION TO SUPPRESS ILLEGAL WIRETAPS NOT PROPERLY PRE-AUTHORIZED BY THE DEPARTMENT OF JUSTICE** <br><br> Hearing Date: July 30, 2012 <br> Hearing Time: 10:00 a.m. |

TO THE UNITED STATES ATTORNEY ANDRE BIROTTE AND ASSISTANT UNITED STATES ATTORNEY REEMA EL-AMAMY and all interested parties:

**PLEASE TAKE NOTICE** that on July 30, 2012 in the Courtroom of the Honorable Otis D. Wright, II, defendant Juan Gil by and through his attorney Alan Eisner will and hereby do move to suppress any and all evidence seized or gathered, directly or indirectly, as a result of unlawful electronic eavesdropping and surveillance.

This motion is made on the grounds that multiple wiretaps in this case were not properly pre-authorized by the Department of Justice as required by law.

This motion is based on this notice of motion, the attached memorandum of points and authorities, all files and records in this case, exhibits, and all evidence to be presented

1

1 | at the time and place herein scheduled for the making of this motion.

2

3                                                       Respectfully submitted,

4                                                       KESTENBAUM EISNER & GORIN LLP

5

6 | Dated: June 30, 2012                      */S/ ALAN EISNER*

7                                                       ALAN EISNER
                                                        Attorney for Defendant
8                                                         JUAN GIL

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MOTION TO SUPPRESS ILLEGAL WIRETAPS NO PROPERLY PRE-AUTHORIZED BY THE DEPARTMENT OF JUSTICE

Contrary to Congress's express directive that no wiretap application should be submitted to a court unless approved by a high-ranking justice department official, (a) one wiretap in this case was routed to a career attorney as to whom the government made no attempt to show he had authority to grant permission to apply for a wiretap, (b) two of the wiretaps applications sought (and received) from the court permission to engage in wiretapping activity broader than that permitted by the Justice Department, and (c) none of the wiretap applications show on their face that they had been approved by a Justice Department official with general authority to grant permission to apply for wiretaps or by a lower-level official who had been "specially designated" to do so and acting within the scope of that special designation.

## STATEMENT OF FACTS

In February 2009, law enforcement sought the first in a series of wiretaps, 09-38. The applicant represented to the court that local prosecutors had been granted permission to seek the wiretaps by Acting Deputy Assistant Attorney General David H. Hennessy who, it represented, had "been specially designated by the Attorney General pursuant to Order Number 2943-2008, dated January 22, 2008." Bates 002. As supposed proof of the Acting Deputy Assistant Attorney General's alleged power to approve the wiretap, the Government represented to the court that "Attached to this application as Exhibit A, and incorporated by reference herein, is a copy of that order." Bates 002. In fact, no such order was included with the application.

Despite informal requests and an in-person meeting with the Government, the Government has never produced the Attorney General's alleged order empowering Acting Deputy Assistant Attorney General David H. Hennessy to authorize any wiretaps.

\*          \*          \*          \*          \*

In March 2009, the government requested permission to wiretap 20 specifically

identified individuals, including one anonymously identified as an unidentified male, "UM," who was believed to be a supplier of narcotics, "SOS". The request was routed to a Deputy Assistant Attorney General who granted permission to apply for a wiretap against several individuals but did not authorize the wiretap for the anonymously identified individual. Bates 135-36.

Regardless of the Justice Department's failure to authorize a wiretap on the unidentified male alleged supplier, the government nonetheless forged ahead and sought and obtained a wiretap on the anonymous individual in addition to the others, 09-38(A): Bates 121, 154, which the issuing judge granted as requested. Bates 225.

\* \* \* \* \*

In June 2009, the government requested permission to intercept the telephone communications of 34 individuals. The request was submitted to a Deputy Assistant Attorney General who declined permission to intercept communications of Armando Barajas, Juan Gil, or an individual ascribed the pseudonym "M" and described only as an individual incarcerated at an unknown location and who spoke to another target subject on one prior occasion. Bates 403.

Heedless of the Justice Department's failure to permit a wiretap on Barajas, Gil and the pseudonymously identified "M," the government nonetheless forged ahead and sought and obtained a wiretap against all three of these individuals in addition to the others, 09-38(C): Bates 390, 427, which the issuing judge granted, Bates 485-86.

\* \* \* \* \*

In February 2009, Attorney General Holder issued Order No. 3055-2009, granting blanket authority for any Deputy Assistant Attorney General of the Criminal Division to grant permission to apply for a wiretap under Title III. Bates 134. Although entitled a "special designation," the blanket Order contained no conditions or limitations on the unrestricted authority that it conferred on these career officials. The blanket Order did not prescribe the authority to a particular time period. The blanket Order did not restrict the authority to the absence, incapacity, or unavailability of any official. Bates 134. The

4

blanket Order did not state any reason for its issuance other than "to preclude any contention that the designations by the prior Attorney General have lapsed." Bates 134.

Between March and September 2009, the government sought six additional wiretaps that are at issue in this case. 09-38(A), 09-38(B), 09-38(C), 09-38(D), 09-38(E), and 09-38(F). None of these wiretaps were submitted for review to the Attorney General, the Deputy Attorney General, or the Associate Attorney General. Each was submitted only to a Deputy Assistant Attorney General and passed on only by that career official. Bates 019, 136, 281, 404, 538, 724, 889.[1]

## ARGUMENT

**I.     Title III Requires Approval by a High Ranking Justice Department Official**

The use of "electronic surveillance," commonly known as "wiretaps," is comprehensively regulated by Title III of the Omnibus Crime Control and Safe Streets Act of 1968. 18 U.S.C. §§ 2510-2520; PUB. L. NO. 90-351, TIT. III, 82 STAT. 197 (June 19, 1968). As such, "[w]hen a law enforcement officer seeks a court order allowing him to set up a wiretap . . . . he has a long and bumpy road ahead of him." *United States v. Callum*, 410 F.3d 571, 574 (9th Cir. 2005).

In drafting the manifold provisions of Title III, Congress was keenly concerned about "protecting the privacy of individual thought and expression." *United States v. United States Dist. Court*, 407 U.S. at 302.[2] Indeed, "Much of Title III was drawn to

---

[1.] In light of the Government's failure and refusal to disclose Order 2943-2008, it is impossible to confirm whether the order was in fact a "special designation" as required by the statute or a generic, general designation like Order 3055-2009. Nonetheless, based on the government's history of inattentiveness, defendants move to suppress wiretap 09-38, approved only by an Acting Deputy Assistant Attorney General on the ground that it, too, was not authorized by an appropriate "special designation."

[2.] "Though physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed, its broader spirit now shields private speech from unreasonable surveillance." *United States v. United States Dist. Court*, , 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972). The Fourth Amendment regulates "not only

5

meet the constitutional requirements for electronic surveillance enunciated by this Court in *Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), and *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)." *United States v. United States Dist. Court*, 407 U.S. at 302.

"Because Congress recognized the grave threat to privacy that wiretaps pose, it spelled out in elaborate and generally restrictive detail the process by which wiretaps may be applied for and authorized." *United States v. Staffeldt*, 478 F.2d 494, 498 (9th Cir. 2006) (quotations and citation omitted). "When Congress enacted the wiretapping provisions of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510-2522, it intended to 'make doubly sure that the statutory authority [for wiretaps] be used with restraint and only where the circumstances warrant the surreptitious interception of wire and oral communications.'" *United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1109-10 (9th Cir. 2005), quoting *United States v. Giordano*, 416 U.S. 505, 515, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974).

For situations where Congress has vested law enforcement with the power to conduct electronic surveillance, "the procedure to be followed is specified in § 2518." *United States v. United States Dist. Court*, 407 U.S. at 304. The requirement of approval by a high level Justice Department official has been a part of Title III since its inception. When the Supreme Court first addressed the requirement of approval by a high level Justice Department official, it quoted from the Senate Committee Report that explained:

Section 2516 of the new chapter authorizes the interception of particular

---

the seizure of tangible items, but extends as well to the recording of oral statements." *Id.*, quoting *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The Court has reasoned that "the broad and unsuspected governmental incursions into conversational privacy which electronic surveillance entails necessitate the application of Fourth Amendment safeguards." *United States v. United States Dist. Court*, 407 U.S. at 313 (footnote omitted).

Apart from the general provisions of the Fourth Amendment, "Title III is the primary law protecting the security and privacy of business and personal communications in the United States today." S. REP. NO. 541, 99th Cong., 2d Sess. 1986, at 2, 1986

6

> wire or oral communication under court order pursuant to the authorization of the appropriate Federal, State, or local prosecuting officer. [¶] *Paragraph (1) . . . centralizes in a publicly responsible official subject to the political process the formulation of law enforcement policy on the use of electronic surveillance techniques. Centralization will avoid the possibility that divergent practices might develop.* Should abuses occur, the lines of responsibility lead to an identifiable person. This provision in itself should go a long way toward guaranteeing that no abuses will happen.

*United States v. Giordano*, 416 U.S. 505, 520, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974) (emphasis added), *quoting* S. REP. NO. 1097, 90th Cong., 2d Sess., 96-97 (1968), *reprinted in* 1968 U.S. Code Cong. & Admin. News, p. 2189, 2192.

The Supreme Court found it "particularly significant" that not only was "the authority to apply for court orders [] narrowly confined but [the committee report] also declares that it is to be limited to those responsive to the political process." *Giordano*, 416 U.S. at 520.

## II. A Wiretap Application Approved Only by a Lower-Level Official Who Had Not Been Specially Designated Violates Title III and Is Invalid

When first enacted, § 2516(1) vested authority exclusively in the Attorney General and, when "specially designated," an Assistant Attorney General. 18 U.S.C. § 2516 (1969).[3] Echoing Congress's emphasis on responsibility being fixed in "a publicly

---

U.S.C.C.A.N. 3555, 3556 (Oct. 17, 1986).

[3.] As originally enacted, 18 U.S.C. § 2516(1) provided:
> The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize the application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications.

18 U.S.C. § 2516(1) (1968); PUB. L. NO. 90-351, § 802, 82 Stat. 216 (June 19, 1968).

7

responsible official subject to the political process," *Giordano*, 416 U.S. at 520, quoting S. REP. NO. 1097, 90th Cong., 2d Sess., 96-97 (1968), *reprinted in* 1968 U.S. Code Cong. & Admin. News, p. 2189, 2192, the Supreme Court observed that "The Attorney General is appointed by the President, by and with the advice and consent of the Senate, 28 U.S.C. § 503, as are the nine Assistant Attorneys General provided for in 28 U.S.C. § 506." *Giordano*, 416 U.S. at 520 n.9.

The Court emphasized the critical importance of Congress's goal in specifically limiting the individuals authorized to authorize wiretap applications:

> it is apparent that Congress desired to centralize and limit this authority where it was feasible to do so, a desire easily implemented in the federal establishment by confining the authority to approve wiretap applications to the Attorney General or a designated Assistant Attorney General. To us, it appears wholly at odds with the scheme and history of the Act to construe § 2516(1) to permit the Attorney General to delegate his authority at will.

*Giordano*, 416 U.S. at 523.

In 1984, 10 years after *Giordano*, Congress expanded the list of political appointees who are generally empowered to authorize wiretap applications to include "[t]he Attorney General, Deputy Attorney General, [and the] Associate Attorney General." Notably, the Deputy Attorney General and Associate Attorney General in whom Congress also vested general authority for approving wiretaps, PUB. L. NO. 98-473, § 1203(c)(4), 98 Stat. 2152 (Oct. 12, 1984), are also appointed by the President subject to the advice and consent of the Senate, 28 U.S.C. §§ 504, 504a.

In explaining this "relatively minor change," Congress reaffirmed *Giordano*'s interpretation of the statutory purpose as "centraliz[ing] in a publicly responsible official subject to the political process the formulation of law enforcement policy." S. REP. NO. 225, 98th Cong., 1st Sess. 1983, at 394, 1984 U.S.C.C.A.N. 3182, 3533 (Aug. 4, 1983). Congress explained its decision for authorizing a slight expansion to two additional

political appointees because "[t]he restriction provided in current law presents serious problems when the statutorily designated individuals – which as a practical matter are or should be limited to the Attorney General or the Assistant Attorney General for the Criminal Division – are not available." S. REP. NO. 98-225, at 394. Although reaffirming a Congressional preference that wiretap approvals be reviewed by the Attorney General or the Assistant Attorney General for the Criminal Division, the scheduling and availability concerns prompted Congress "to add the Deputy Attorney General and the Associate Attorney General to the specific statutory list of individuals within the Department of Justice authorized to approve applications to the courts for a surveillance order." S. REP. 98-225, at 396, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3533. Congress explained that expanding the number of potential authorizing officials permitted "a broader sharing of the burden for reviewing potential surveillance cases, thereby promoting a more thorough consideration without diminishing the congressional intent to have a politically responsible high official personally approve surveillance applications or emergency interceptions." S. REP. 98-225, at 396, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3533.[4]

For similar reasons of ensuring continuous availability of an authorizing official, Congress has also expanded the list of people who may be "specially designated" from "any Assistant Attorney General" to "any Assistant Attorney General, any acting Assistant Attorney General, or any Deputy Assistant Attorney General or acting Deputy

---

[4.] After the 1984 amendment, authority to approve wiretaps was vested in "[t]he Attorney General, Deputy Attorney General, Associate Attorney General or any Assistant Attorney General specially designated by the Attorney General." 18 U.S.C. § 2516(1) (1985).

When it added "acting" Justice Department officials, PUB. L. NO. 99-508, § 104, 100 Stat. 1855 (Oct. 21, 1986), Congress clarified that "[t]he addition of an acting Assistant Attorney General is not meant to imply rejection in any other context of the well-established principle that an acting official ordinarily possesses all the legal powers of the official for whom he is acting, but to clarify the law under this statute." S. REP. NO. 541, 99th Cong., 2d Sess. 1986, at 28, 1986 U.S.C.C.A.N. 3555, 3582 (Oct. 17, 1986).

9

Assistant Attorney General in the Criminal Division or National Security Division." 18 U.S.C. § 2516(1).[5]

In its present incarnation, 18 U.S.C. § 2516(1) specifically identifies the limited class of persons who have the authority to grant permission to seek a wiretap order:

> The Attorney General, Deputy Attorney General, Associate Attorney General, or any Assistant Attorney General, any acting Assistant Attorney General, or any Deputy Assistant Attorney General or acting Deputy Assistant Attorney General in the Criminal Division or National Security Division specially designated by the Attorney General, may authorize an application.

18 U.S.C. § 2516(1).

Even in its current incarnation, every office holder with statutorily vested authority to approve a wiretap application – the Attorney General, Deputy Attorney General and Associate Attorney General – is a political appointee subject to the political process, as is any Assistant Attorney General (or Acting Assistant Attorney General) who may be specially designated. Only Deputy Assistant Attorneys General (including, of course, those in the Criminal Division or National Security Division), who have such power only when "specially designated" are career attorneys, and not political appointees subject to congressional confirmation.

---

[5.] In 1986, Congress expanded the list of officials who may be specially designated to include "any Assistant Attorney General, any acting Assistant Attorney General, or any Deputy Assistant Attorney General in the Criminal Division". Pub. L. 99-508, § 104, 100 Stat. 1855 (Oct. 21, 1986). ("Under this amendment, the list of officials who may be specially designated by the Attorney General to authorize applications will include any acting Assistant Attorney General, or any Deputy Assistant Attorney General in the Criminal Division." S. REP. NO. 541, 99th Cong., 2d Sess. 1986, at 28, 1986 U.S.C.C.A.N. 3555, 3582 (Oct. 17, 1986).) Twenty years later, in 2006, as part of the USA PATRIOT Improvement and Reauthorization Act, Congress added the Deputy Assistant Attorney General of the National Security Division to the list of officials who could be specially designated. Pub. L. 109-177, § 506(a)(6), 120 Stat. 248 (2006).

As explained above, "Congress intended not only to limit resort to wiretapping to certain crimes and situations where probable cause is present *but also to condition the use of intercept procedures upon the judgment of a senior official in the Department of Justice that the situation is one of those warranting their use*." *Giordano*, 416 U.S. at 527 (emphasis added). The expansion of the officials who could be specially designated was not enacted to vitiate this requirement but to ensure that it the government was not deprived of access to this law enforcement tool merely because of individual unavailability or scheduling conflicts or a transition between different administrations or different Attorneys General.

### III. Wiretap 09-38 Failed to Show, On its Face, that the Application Was Authorized by an Authorized Justice Department Official

The February 2009 wiretap application was accompanied by a memorandum of purported authorization by an Acting Deputy Assistant Attorney General. Bates 018-19. An Acting Deputy Assistant Attorney General has no power to authorize a wiretap application unless "specially designated by the Attorney General" to do so. 18 U.S.C. § 2516(1).

The application, and Acting Deputy Assistant Attorney General David H. Hennessy's memorandum of purported authorization, represented to the wiretap issuing judge that he had been specially designated by the Attorney General to approve this wiretap application by Attorney General Order 2943-2008. Although stating that Order 2943-2008 accompanied the application, no such order was included. Defense counsel have made repeated requests to the Government to produce the Order that purportedly authorized Deputy Assistant Attorney General Hennessy to approve wiretap 09-38. The government has promised, but repeatedly failed, to do so.

The government's failure to produce Order 2943-2008 strongly suggests that the Order does not exist or that the Order did not, in fact, "specially designate" Deputy Assistant Attorney General Hennessy as represented to the issuing judge.

11

"[W]hen a DOJ memorandum of authorization for a wiretap request is presented to a judge reviewing a wiretap application, that memorandum is part of the application." *Staffeldt*, 451 F.3d at 579 n.1.

The absence of approval by an empowered Justice Department official renders the wiretap order invalid. *Giordano*, 416 U.S. at 515-16 (justice department approval is "a critical precondition to any judicial order").

## IV. Wiretaps 09-38(A) and 09-38(C) Are Facially Deficient Because the Applications Sought, and Orders Granted, Interception More Expansive than Authorized by Any Justice Department Official

In Wiretap 09-38(A) the government sought and obtained a court order to intercept telephone communications by a pseudonymously identified "UM," described only as an unidentified male believed to be supplying narcotics to one of the targets. No one in the Department of Justice had authorized the government to wiretap "UM."

In Wiretap 09-38(C), the government repeated this behavior – obtaining a wiretap warrant without Justice Department authorization – with regard to Armando Barajas, Juan Gil and a person identified only as "M."

By purporting to allow interception of Barajas's, Gil's, M's, and UM's electronic communications, these two wiretap orders were invalid on their face. *Giordano*, 416 U.S. at 515-16 (justice department approval is "a critical precondition to any judicial order").

## V. Each of Wiretap in the 09-38 Series Are Facially Insufficient Because They Were Not Approved by a Justice Department Official with Power to Approve Them

None of the wiretaps at issue in this case was reviewed by the Attorney General, Deputy Attorney General or Associate Attorney General. Nor were any of the wiretap applications submitted to an Assistant Attorney General. When submitted to the Justice

12

1 Department for approval, each was routed to one of the Deputy Assistant Attorneys
2 General for the Criminal Division (or, in one instance, an Acting Deputy Assistant
3 Attorney General).
4 Each Deputy Assistant Attorney General who reviewed a wiretap application did
5 so under the ostensible authority of an internal order issued by Attorney General Holder
6 that provided:

> . . . [*I*]*n order to preclude any contention that the designations by the prior Attorney General have lapsed*, the following officials are hereby specially designated to authorize applications to a Federal judge of competent jurisdiction for orders authorizing or approving the interception of wire or oral communications . . .
>
> 1. The Assistant Attorney General in charge of the Criminal Division, any Acting Assistant Attorney General in charge of the Criminal Division, any Deputy Assistant Attorney General of the Criminal division, and any Acting Deputy Assistant Attorney General of the Criminal Division . . .

Bates 134, 282.

Order 3055-2099 was not itself a "special designation," but a ratification of a prior order "to preclude any contention that the designations by the prior Attorney General have lapsed." Bates 134, 282. The Government did not submit to the wiretap court evidence that any of the Deputy Assistant Attorneys General who reviewed and purportedly attempted to approve the applications in this case had previously been "specially designated" to authorize wiretap applications.

In the absence of an earlier valid "special designation," Order 3055-2009 did not independently constitute the requisite "special designation" required by 18 U.S.C. § 2518(1). Order 3055-2009 was an open-ended, long-term generic extension of prior authority. Order 3055-2009 was not limited to any specific individual; it was not limited

13

to specific office or office holder; it was not limited to a specific time period; it was not limited to specific purpose; it was not tethered to the existence of any specific conditions. In short, there was nothing "special" or "specific" about the designation contained in Order 3055-2009. Regardless of whether it may have been sufficient to extend previously issued special designations, to the extent the government might rely exclusively on Order 3055-2009, it amounted to nothing more than a "general designation," not a "special designation" required by statute. If read as authority for career attorney Deputy Assistant Attorneys General to routinely review and authorize wiretaps, Order 3055-2009 amounts to a wholesale delegation of the Attorney General's, Deputy Attorney General's, and Associate Attorney General's statutorily invested obligation to ensure that the "mature judgment of a particular responsible Department of Justice official is interposed as a critical precondition to any judicial order." *Giordano*, 416 U.S. at 515-16. The lack of review and approval by a high ranking, politically accountable official – or a lower ranking official acting on a proper "special designation" – fundamentally thwarts Congressional intent. Regardless of whether such special designations may be appropriate for limited times and limited circumstances, the wholesale delegation of authority to career officers defies Congress's judgment that the scope of authorizing officials should not only "be limited to those responsive to the political process," *id.*, at 520, but "as a practical matter are or should be limited to the Attorney General or the Assistant Attorney General for the Criminal Division." S. REP. NO. 98-225, at 394.

Any suggestion that Deputy Assistant Attorneys General may be generally designated to review and authorize wiretap applications when Congress specifically provided that they should do so only when "specially designated" undermines an essential Congressional goal:

> Narrow construction of the wiretapping provisions furthers Congress' dual purposes for the Act of "(1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances

14

> and conditions under which the interception of wire and oral communications may be authorized."

*Gonzalez, Inc.*, 412 F.3d at 1109-10, quoting *Gelbard v. United States*, 408 U.S. 41, 48, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), quoting S. REP. NO. 90-1097, at 66 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2122, 2153.

In short, to allow an order such as Order 3055-2009, which simply delegates the review of wiretap authorizations to nonpolitical appointees and career officials, to qualify as a "special designation" required by statute would fundamentally undermine "congressional intent to have a politically responsible high official personally approve surveillance applications or emergency interceptions" that Congress deemed necessary as an important safeguard against unnecessary wiretapping. S. REP. 98-225, at 396, reprinted in 1984 U.S.C.C.A.N. 3182, 3533.

### VI. The Violations of Congressional Command Mandate Suppression

The failure of pre-application approval by a generally-empowered official or an official acting pursuant to an appropriate "special designation," is both a facial defect and a factor that renders the communications seized thereunder "unlawfully intercepted," each of which warrant suppression. 18 U.S.C. § 2518(10)(a).[6]

Facial defects in wiretap orders are grounds for suppressing evidence obtained from, or derived from, a wiretap:

> Any aggrieved person in any trial, hearing, or proceeding in or before any

---

[6.] The words 'unlawfully intercepted' are themselves not limited to constitutional violations, and we think Congress intended to require suppression where there is failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device. *Giordano*, 416 U.S. at 527.

15

court . . . may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that (i) the communication was unlawfully intercepted [or] (ii) the order of authorization or approval under which it was intercepted is insufficient on its face.

18 U.S.C. § 2518(10).

"The Act requires suppression 'where there is failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device.' The 'prior, informed judgment' of 'a particular, responsible Department of Justice official' is such a requirement." *United States v. Reyna*, 218 F.3d 1108, 1111-12 (9th Cir. 2000), quoting *Giordano*, 416 U.S. at 527. "Indeed, the 'provision for pre-application approval was intended to play a central role in the statutory scheme and suppression must follow when it is shown that this statutory requirement has been ignored.'" *Reyna*, 218 F.3d at 1112, quoting *Giordano*, 416 U.S. at 528. *Cf. United States v. Staffeldt*, 451 F.3d 578 (9th Cir. 2006) (failure of order to demonstrate proper authorization requires suppression).[7]

///

///

---

[7] The Supreme Court has emphasized "the sensitivity of the problem involved" because "each surveillance may involve interception of hundreds of different conversations." *United States v. United States Dist. Court*, 407 U.S. at 313 n.14. Recognizing "the extraordinary care Congress exercised in drafting . . . the Act," *id.*, at 306, the Supreme Court has concluded that "the provision for pre-application approval was intended to play a central role in the statutory scheme . . . [S]uppression must follow when it is shown that this statutory requirement has been ignored." *Giordano*, 416 U.S. at 528.

**CONCLUSION**

For the foregoing reasons, the evidence seized through Wiretaps 09-38, and all succeeding wiretaps, and all evidence derived therefrom should be suppressed.

Respectfully submitted,

KESTENBAUM EISNER & GORIN LLP

Dated: June 30, 2012 /S/ ALAN EISNER

ALAN EISNER
Attorney for Defendant
JUAN GIL