ALAN EISNER, State Bar #127119
KESTENBAUM EISNER & GORIN LLP
14401 Sylvan Street, Suite 112
Van Nuys, CA 91401
Phone:        (818) 781-1570
Fax:          (818) 781-5033
Email:        ae@keglawyers.com

Attorney for Defendant
JUAN GIL

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>                    Plaintiff, )<br><br>          v. )<br><br>ARMANDO BARAJAS, et al., )<br>JUAN GIL (2) )<br>                    Defendant. )<br>_____ | Case No.:  2:10-CR-00351-ODW-02<br><br>**DEFENDANT JUAN GIL'S MOTION TO SUPPRESS EVIDENCE DERIVED FROM WIRETAPS ISSUED WITHOUT PROBABLE CAUSE**<br><br>Hearing Date: October 15, 2012<br>Hearing Time: 10:00 a.m.<br>Hon. Otis Wright II |

TO THE UNITED STATES ATTORNEY ANDRE BIROTTE AND ASSISTANT

UNITED STATES ATTORNEYS REEMA EL-AMAMY AND MICHAEL DORE and

all interested parties:

          PLEASE TAKE NOTICE that defendant Juan Gil, through counsel, hereby files

his motion to suppress evidence derived from wiretaps issued without probable cause.

                              Respectfully submitted,

                              KESTENBAUM EISNER & GORIN LLP


Dated: September 17, 2012          */S/ ALAN EISNER*_____

                              ALAN EISNER
                              Attorney for Defendant
                              JUAN GIL

## MOTION TO SUPPRESS EVIDENCE DERIVED FROM WIRETAPS
## ISSUED WITHOUT PROBABLE CAUSE

Rather than undertake the basic investigative tasks necessary to demonstrate the need for a wiretap, the government just started its investigation by applying for a wiretap. By leap-frogging over rudimentary investigative tasks, for many of the individuals whose conversations law enforcement sought to eavesdrop upon, the wiretap applications (a) fail to establish probable cause that the individual was engaged in any criminal activity, (b) fail to establish probable cause that conversations concerning any criminal activity would occur over the telephone, or (c) fail to establish probable cause that the individual regularly used the targeted telephone.  Law enforcement must establish *all three* types of probable cause before a wiretap may issue.

### STATEMENT OF FACTS

In February 2009, the government sought the first in a series of wiretaps.  Based on the affidavit of Ontario Police Officer Kris Lavoie, the wiretap application identified 18 specific living individuals, in addition to one dead person and "others known, unknown, or unidentified," whose conversations it wanted to intercept through the proposed wiretap.  Bates 005.  The proposed wiretap sought to intercept communications over two separate telephone lines, one allegedly used by Defendant Marco Antonio Torres-Cruz, whom the government identified only as "Alex," and allegedly suspected to be used by Torres-Cruz's alleged source for narcotics, a person enigmatically identified only as "UM" and "SOS".  Bates 002-003.

The government claimed a two-fold investigative objective.  The principal focus of the investigation was, ostensibly, "to identify members and associates of the Ontario Black Angels," which Officer Lavoie characterized as "criminal street gang," even though neither "Alex" nor the reputed "source" were suspected to be associated with the

purported "gang."  Bates 036.[1]

Secondarily, the government claimed to seek more information about "Alex's" narcotics trafficking.  Bates 036.

Insofar as the Black Angels aspect of the investigation was concerned, the government sought to target the communications of Manuel Vega, who Lavoie identified as "a known and admitted member of the Ontario Black Angels" but who, Lavoie acknowledged "was the victim of a homicide."  Bates 032, 044.[2]  The only other person targeted by the wiretap who was allegedly affiliated with the Black Angels was Defendant David Navarro.  Officer Lavoie hypothesized that "Navarro contacts Alex to collect extortion payments," Bates 032, but the only specific fact offered in support of this hypothesis was the existence of a single, isolated telephone conversation that occurred three months earlier, in November 2008, when Vega was still alive, that Officer Lavoie interpreted as indicating that "'David' assisted Vega by collecting extortion payments."  Bates 041.  Officer Lavoie hypothesized that "Navarro has taken over the responsibilities of collecting extortion payments" following Vega's death, Bates 044, but the affidavit contained no specific facts suggesting any basis for this assertion other than rank speculation.

The government's showing as to targets connected with "Alex" was no less asthenic.

Apart from the dead Vega, the government made *no showing whatsoever* of probable cause as to five of the Target Subjects.  For example, Larry Cuevas was

---

[1.] In October and November of 2008, local authorities established wiretaps on Torres-Cruz, claiming to focus only on investigating Torres-Cruz and those he dealt with.  The last state wiretap expired January 12, 2009.  After a one month gap, federal authorities began overseeing the case and added the Black Angels as their investigative focus.

[2.] Lavoie represented that Vega had been murdered in January 2008, a year earlier, Bates 032, 044, even though law enforcement clearly knew that Vega had been killed only a month before the wiretap application, Bates 2830-2910, and had been in communication with others in October 2008 and January 2009, more than 9 months to a year after his reported death.  Bates 040, 050, 159, 172, 308.  Vega was, in any event, still dead and unlikely to be communicating on any of the target telephones.

described only as "a *previous* customer and courier." Bates 034. The affiant clarified that Cuevas was "currently in custody." Bates 034. The affiant stated, in describing Target Subjects Patrick Orosco and Shawn Young, that law enforcement "believed" that each was a street level courier, Bates 034-035, but the affiant stated no further specific underlying facts from which the issuing judge could draw such a conclusion. Indeed, Onsurez and Young were not mentioned in the affidavit other than identifying them as Target Subjects whose phone conversations were to be intercepted by government agents. Ray Perez and "Mario LNU" were identified only as "customers" but, again *no facts* about any purchase or contacts were given from which a judge could infer that a seller-customer relationship existed.

## ARGUMENT

### I.   Law Enforcement Failed to Establish the Requisite Three Types of Probable Cause For Many of The Target Subjects

The Fourth Amendment regulates "not only the seizure of tangible items, but extends as well to the recording of oral statements." *United States v. United States Dist. Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972), quoting *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). It quite clearly provides that "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. CONST., amend. IV.

In order to constitute a lawful wiretap, 18 U.S.C. § 2518(3) similarly forbids judicial officers from granting wiretap orders without probable cause. Congress, in fact, required the government to demonstrate three different types of probable cause before a court could lawfully intercept otherwise-private telephone communications. Under 18 U.S.C. § 2518(3), a "judge may enter an ex parte order . . . authorizing or approving the interception of wire, oral, or electronic communications [only] . . . if the judge determines on the basis of the facts submitted by the applicant that:

"(a) there is probable cause for belief that [the] individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter.

"(b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception . . . [and]

"(d) there is probable cause for belief that the facilities [to be intercepted] . . . are leased to, listed in the name of, or commonly used by such person."

18 U.S.C. § 2518(3)(a), (b), (d).  See also *United States v. Meling*, 47 F.3d 1546, 1552 (9th Cir. 1995).[3]

"Probable cause exists when there is a fair probability or substantial chance of criminal activity."  *United States v. Bishop*, 264 F.3d 919, 924 (9th Cir. 2001), citing *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).  Although "not readily, or even usefully, reduced to a neat set of legal rules," the existence of probable cause "turn[s] on the assessment of probabilities in particular factual contexts." *Gates*, 462 U.S. at 238.  To satisfy the constitutional minimum:

the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information [must be] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed, and that evidence bearing on that offense will be

---

[3].   A district judge authorizing a wiretap must enter several statutorily-required findings of probable cause.  The judge must find probable cause to believe (1) that an individual is committing, has committed, or is about to commit specified offenses, including product tampering and obstruction of justice, 18 U.S.C. § 2518(3)(a); (2) that communications relevant to that offense will be intercepted through the wiretap, *id.* § 2518(3)(b); and (3) that the individual who is the focus of the wiretap investigation will use the tapped phone, *id.* § 2518(3)(d).
*Meling*, 47 F.3d at 1551-52.

found in the place to be searched.

*Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370, 129 S.Ct. 2633, 174 L.Ed.2d 354 (2009), quoting *Brinegar v. United States*, 338 U.S. 160, 175-176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), quoting *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

Even in *Gates*, however, the Supreme Court reaffirmed that bare conclusions are insufficient.  A "conclusory statement that gives the magistrate virtually no basis at all for making a judgment" fails to satisfy the probable cause standard required by the constitution.  *Gates*, 462 U.S. at 239.  Rather, an affidavit "must provide the magistrate with a substantial basis for determining the existence of probable cause."  *Gates*, 462 U.S. at 239.[4]  The Supreme Court emphasized:

> Sufficient information must be presented to the magistrate to allow that
> official to determine probable cause; his action cannot be a mere ratification
> of the bare conclusions of others.  In order to ensure that such an abdication
> of the magistrate's duty does not occur, courts must continue to
> conscientiously review the sufficiency of affidavits on which warrants are
> issued.

*Gates*, 462 U.S. at 239.

## II.    The Affidavit Supporting the February 2009 Wiretap 09-38 Failed to Establish All Three Types of Probable Cause for Each Target

**1.    Manuel Vega**:  The wiretap affidavit sought to intercept the conversations of a dead person, Manuel Vega.  The defect in this is not that law enforcement did not have the assistance of a medium on their side, but that the agents executing the wiretap

---

[4.] Thus, for example, "A sworn statement of an affiant that 'he has cause to suspect and does believe' . . . [certain facts exist] will not do."  *Gates*, 462 U.S. at 239, citing *Nathanson v. United States*, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933).  Similarly, "An officer's statement that '[a]ffiants have received reliable information from a credible person and do believe' that heroin is stored in a home, is likewise inadequate."  *Gates*, 462 U.S. at 239, citing *Aguilar v. Texas*, 378

were instructed to eavesdrop upon conversations so they could learn the voices of the various wiretap targets. Bates 090-091. As a result, throughout the wiretap period but especially during the early stages of the interception, by adding superfluous targets to their wiretap, the monitoring agents could justify listening for a longer period of time for the dead person who never be on the phone. *United States v. Chavez*, 533 F.2d 491, 493-94 (1976).

    **2.**     **David Navarro**: Officer Lavoie offered the issuing judge no specific factual information "to warrant a man of reasonable caution in the belief that an offense has been or is being committed," *Safford Unified School Dist.*, 557 U.S. at 370, let alone that he was likely to use the phone during the interception period to further the speculative hypothesized crimes, § 2518(b)(3)(b), (d). The only fact about Navarro was that, three months earlier, when Vega was still alive, Navarro had "assisted Vega" on one isolated occasion, apparently at Vega's behest. Bates 041. Vega was now dead. Officer Lavoie provided no specific facts suggesting that Navarro ever had any other communication or that he ever did so other than at Vega's request. Although Officer Lavoie speculated that Navarro had "taken over the responsibilities" of Vega, other than this bald conclusion, the affidavit provided no facts to support that "bare conclusion." The officer's conclusion is inadequate. *Gates*, 462 U.S. at 239; 18 U.S.C. § 2518(3)(a).

    There was a single communication by Navarro. There was no fact stated indicating that it was a criminal conversation. Even if criminal, there was no fact stated indicating that Navarro ever had a similar conversation with anyone at any later time. There was no fact indicating that Navarro was currently engaging in any communications over the telephone, let alone over either of the target telephones. 18 U.S.C. § 2518(3)(b), (d).

    Law enforcement apparently obtained a pen register or trap and trace device on Alex's telephone. "The pen register is a device used typically in the early stages of an investigation to generate leads for further inquiry." *Hodge v. Mountain States Tel. & Tel.*

U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

*Co.*, 555 F.2d 254, 258 (9th Cir. 1977).  The pen register did not provide any leads to implicate that Navarro w as communicating on either target telephone.

Devoid of evidence that Navarro was involved in any crime, that Navarro used the telephone to communicate information about those hypothetical crimes, or that Navarro had communicated over the target telephone at any time during the prior 3 months (let alone did so on a regular basis), the affidavit failed on all three elements of probable cause as to David Navarro.  18 U.S.C. § 2518(3)(a), (b), (d).

3.   **Carmela "LNU"**: Stating that Carmela was Alex's wife, Officer Lavoie sought to intercept all of Carmela's communications with Alex.  Bates 035.  Officer Lavoie hypothesized that Carmela "assists" Alex in his drug dealing but suggested no specific facts to either support or explain that hypothesis.  Apart from her marital relationship with "Alex" and their cohabitation, Officer Lavoie offered no facts suggesting that Carmela had ever engaged in any illegal activity or ever communicated with Alex over the target telephone.  Was he, for example, asserting that Carmela's assistance consisted of cooking dinner for the couple, as a result of which Alex felt nourished and could carry on his alleged illegal activity?  The wiretap judge had no idea. After describing her as Alex's wife, Officer Lavoie never again referenced Carmela in the affidavit, let alone suggested there was any basis for wiretapping the suspect's wife.

Devoid of facts establishing probable cause that Alex's wife was (a) engaged in criminal activity, (b) used the phone to communicate with her husband about illegal activities, and (c) regularly communicated with her husband over the target telephone, 18 U.S.C. § 2518(3)(a), (b), and (d), law enforcement was not legally authorized to expand the scope of their search to listen for her communications.

4.   **"Cabezon"**:  Cabezon was identified as Alex's brother-in-law and his communications were targeted on the hypothesis that, in some unidentified way, he "assists Alex with his narcotics distribution."  Bates 035.  Officer Lavoie said his conclusion was "based on intercepted calls" over Alex's phone, Bates 035, but did not identify who participated in the phone call (such as whether the inference was derived

from statements made by Cabezon or made by others about Cabezon), what was said, when the phone call was placed, or whether the assumption was based on a single, isolated phone call or a series of phone calls.  The affidavit stated no other facts detailing what Cabezon's "assistance" supposedly consisted of (which might have been nothing more than providing a place for rest and relaxation on the weekends while Alex visited along with his wife), when it had occurred in the past, or how often it occurred.  The affidavit did not suggest that the person referred to as Cabezon had ever used either target telephone nor provided any basis for believing that he would do so in the future.  The affidavit made no further reference to Cabezon after stating that law enforcement wanted to listen in on Cabezon's conversations.

Having failed to identify any specific facts, Officer Lavoie's affidavit failed to establish probable cause that Cabezon was involved in any criminal activity.  18 U.S.C. § 2518(3)(a).  Officer Lavoie's affidavit similarly failed to establish any basis for inferring that Cabezon would communicate about the hypothesized criminal activity over the phone, § 2518(3)(b), or that Cabezon ever used or had access to Alex's telephone, § 2518(3)(d).

**5.    Larry Cuevas**:  Larry Cuevas was described only as "a *previous* customer and courier."  Bates 034.  The affiant clarified that Cuevas was "currently in custody." Bates 034.  By affirming his status as only a *previous* customer and courier, law enforcement implicitly acknowledged that any connection between Cuevas and the other Target Subjects was stale.  Moreover, by confessing that Cuevas was "currently in custody," Officer Lavoie also simultaneously conceded that Cuevas was unlikely to able to make a call from or to either of the target telephones.[5]  18 U.S.C. § 2518(3)(a), (b), (d).

**6.    Paul Onsurez** and **Shawn Young**:  The affiant stated, in describing Target Subjects Paul Onsurez and Shawn Young, that law enforcement "believed" that each was a street level courier, Bates 034-035, but the affiant stated no further specific underlying

---

[5.] Officer Lavoie affirmed that both target telephones were cellular telephones, Bates 002-003, 024-025, 053, while inmate phones cannot place calls to cellular telephones.

1    facts from which the issuing judge could draw such a conclusion.  Cf. *Gates*, 462 U.S. at

2    239.  Indeed, Onsurez and Young were not mentioned in the affidavit other than

3    identifying them as Target Subjects whose phone conversations were to be intercepted by

4    government agents.  There was no showing of probable cause that they were engaged in

5    any of the target offenses, "commonly used" the targeted telephones, or were probably

6    likely to communicate about the target offenses over the target telephones.  18 U.S.C. §

7    2518(3)(a), (b), (d).

8         **7.    Ray "LNU"**: The affidavit identified Ray "LNU" only as a "customer,"[6]

9    Bates 035, but, again *no facts* about any purchase or contacts were given from which a

10   judge could infer that a seller-customer relationship existed.  Ray was additionally

11   described as "a friend of Shawn Young" but the affidavit offered no facts suggesting that

12   the relationship was a basis for inferring any criminal connection on Ray's part,

13   especially after the affidavit provided no facts from which one could infer Young was

14   engaged in any criminality.  18 U.S.C. § 2518(3)(a).  The affidavit stated no facts

15   regarding Ray's use of any telephones, let alone the target telephones, let alone that he

16   would communicate any information over the phone that was related to the investigation.

17   18 U.S.C. § 2518(3)(b), (d).

18        **8.    Mario "LNU"**:  Based on an unidentified telephone conversation between

19   "Richard LNU" and Alex, Bates 051 ¶ 45.b, Officer Lavoie inferred that Mario was a

20   "customer" of Richard's, Bates 034.  Devoid of any facts such as to what was said, by

21   whom, or when, the wiretap judge was in no position to find that the officer's

22   unexplained conclusion amounted to probable cause that Mario was engaging in illegal

23   activity.  *Gates*, 462 U.S. at 239; 18 U.S.C. § 2518(3)(a).  The affidavit provided no

24   information from which anyone could infer that Mario had access to any telephone, let

25   alone either of the target telephones, or ever spoke to Alex.  18 U.S.C. § 2518(3)(b), (d).

26        **9.    Richard "LNU"**: Officer Lavoie identified Richard LNU as "a *former*

27

28        [6.] Ray was later identified in the May 2009 wiretap as Ray Perez who was, by that time, "a
     former customer."  Bates 300 ¶ 21.m.

customer" of Alex's."  Bates 034.  Officer Lavoie stated that Richard worked with someone (Steve Hoyos) who worked with Alex.  Bates 034.  Officer Lavoie identified only a single instance, January 5, 2009, five weeks before the February 13, 2009 wiretap application, where Richard used a telephone.  According to Lavoie, Richard had been the victim of a robbery, and Alex called Richard and asked him what happened.  Bates 050-51.  Officer Lavoie identified no other instance, during the entire history of the investigation, where Richard supposedly spoke on or had access to Alex's telephone.  The only facts offered by the affiant was that Richard was the victim of a crime, not a criminal himself.  *Cf.* 18 U.S.C. § 2518(3)(a).  The facts did not demonstrate that Richard "commonly used" the target telephone let alone spoke about the target offenses over the telephone.  18 U.S.C. § 2518(3)(b), (d).

**10.**     **Gabriel Macias:** Similar to Onsurez and Young, Officer Lavoie hypothesized that Macias was a "street level courier" for Alex.  Bates 035.  With Macias, however, Officer Lavoie added that, in August 2008, seven months before the wiretap application was being filed, Macias had been stopped by police and "suspected of being under the influence of heroin" and, not surprisingly for a user, also found in possession of heroin and cocaine.  Bates 082-83.  Police discovered some undescribed "handwritten notes" during a search of Macias's car.  Bates 083.  The affidavit did not provide any information about the amount of drugs possessed or nature of their packaging suggesting anything more than that Macias was a casual user or a drug addict.[7]  The facts did not demonstrate probable cause of a crime for which wiretapping was authorized.  18 U.S.C. § 2518(3)(a).

Macias had, on that one occasion in August 2008, seven months before the wiretap February 2009 application, apparently used his telephone to speak with Hoyos, a person who spoke with Alex.  Bates 083.  There was no indication Macias had any contact with

---

[7.] That Macias may have been guilty of driving under the influence was (a) not a crime for which wiretapping is authorized, 18 U.S.C. § 2516, and (b) not a crime for which it is reasonable to assume that wiretapping would be highly effective to capture evidence, 18 U.S.C. § 2518(3)(b).

Alex or the target telephones and, thus, a lack of probable cause that he would be intercepted talking about the target offenses on those phones.  18 U.S.C. § 2518(3)(b), (d).

**11.**   **Sara Misquez**:  Sara Misquez was not alleged to have any connection with the Black Angels.  Officer Lavoie described Misquez as "a *previous* courier for Alex," Bates 033, a status not consistent with probable cause for believing that she was participating in the target offenses.  18 U.S.C. § 2518(3)(a).

The only evidence that Misquez had any contact with "Alex" was the one time when she happened to be at the same Carl's Jr. fast food restaurant at the same time as Alex in July 2008.  A month later, in August 2008, when surveillance was tracking Alex ("Torres-Cruz"), he drove by Misquez's house on one occasion on his way to another location.  Bates 066-67.  Misquez had been arrested in March 2008, Bates 038, nearly a year before the wiretap application, had subsequently pled guilty, and was still "in custody" at the time of the wiretap application, Bates 039.  An informer trying to work off a new criminal case told law enforcement Misquez had *previously* been connected with Alex in June 2008, Bates 036-37, about three months after she was arrested and still nine months before the wiretap application.  Officer Lavoie did not suggest that Misquez ever spoke to Alex on Alex's telephone (TT#1) or over *any* telephone.  These facts failed to establish probable cause that she would be communicating with Alex over the target telephone regarding the target offenses.  18 U.S.C. § 2518(3)(b), (d).

**12.**   **Patrick Orosco**: Although presenting facts suggesting that Orosco was in regular telephone contact with Alex, Officer Lavoie provided no facts from which the wiretap judge could reasonably conclude that Orosco was involved in illegal activity or used the phone for illegal activity.  Officer Lavoie hypothesized that Orosco was "believed to be a narcotics courier for Alex[]" but provided no facts to support that conclusion.  Bates 034.

Here, law enforcement tendered only the fact that Alex may have been in criminal activity and that Orosco spoke to Alex.  But "mere guilt by association . . . is insufficient

probable cause to support a search warrant." *United States v. Brown*, 951 F.2d 999, 1004 (9th Cir. 1991), citing *Ybarra v. Illinois*, 444 U.S. at 91.  In similar circumstances, the Supreme Court declared "It must be emphasized that [law enforcement] was completely ignorant regarding the content of these conversations" when affirming an absence of probable cause to search.  *Sibron v. New York*, 392 U.S. 40, 62, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).  "The inference that persons who talk to narcotics [dealers] are engaged in the criminal traffic in narcotics is simply not the sort of reasonable inference required to support an intrusion by the police upon an individual's personal security." *Id.*, at 62.

Devoid of facts establishing probable cause that (a) Orosco was engaged in criminal activity and (b) Orosco was conversing about that criminal activity over the telephone, law enforcement was not permitted to expand the scope of their search to listen for Orosco's communications.  18 U.S.C. § 2518(3)(a), (b).

**Summary**: Law enforcement failed to establish any one of three required showings of probable cause for each of the only two individuals alleged to provide the Black Angels aspect of the investigation.  There was an inadequate showing of one or more of the required probable cause showings as to at least 11 of the 17 individuals law enforcement sought to intercept regarding the investigation of Alex.

## III.   The Affidavit Supporting the March 2009 Wiretap 09-38(A) Failed to Establish All Three Types of Probable Cause for Each Target

**1.**     **Carmela "LNU"**:  As of the March 2009 wiretap, Officer Lavoie could provide no more information about Carmela's hypothesized illegal activity other than that she was Alex's wife, she lived with him, and, in some unspecified way, Officer Lavoie "believes [she] assists" her husband.  Bates 154.  Apart from her marital and cohabitation relationship with Alex, her name was never again mentioned at any point in the affidavit.

Not only did law enforcement fail to establish probable cause to intercept Carmela's conversations based on the minimal facts provided in the first affidavit, but,

after an entire month of wiretapping, law enforcement was able to say no more about Carmela than they had reported over a month earlier.  She, apparently, was not on the phone and, if she was, was not talking about any criminal activity.  Whatever could be said for the effete probable cause showing in 09-38, law enforcement had utterly failed to demonstrate a reasonable basis for eavesdropping on Carmela's telephone conversations in March 2009.  There was no probable cause to demonstrate her involvement in any target offense, her use of the target telephones, or her discussion of any of the target offenses.  18 U.S.C. § 2518(3)(a), (b), (d).

**2.     Cabezon**:  The March 2009 affidavit added no new information about Cabezon.  Officer Lavoie repeated his assumption from the February 2009 affidavit that he presumed that based on previously intercepted calls, he "believe[d]" that Cabezon (Alex's brother-in-law) somehow assisted Alex in some undefined way based on an unidentified conversation that was intercepted at some unknown time between undisclosed people, the contents of which (or even a summary thereof) was never disclosed to the wiretap judge.  Bates 154.  There was no evidence that, after an entire month of wiretapping, Cabezon was ever intercepted over any of the target telephones speaking about anything, let alone speaking about any criminal activity.  In fact, the affidavit made no further reference to Cabezon after stating that law enforcement wanted to listen in on Cabezon's conversations.

There was no better showing of probable cause that Cabezon was involved in any criminal activity, that he was likely to talk about such activity over the telephone, or that he ever communicated with anyone over the targeted telephones.  18 U.S.C. § 2518(3)(a), (b), (d).

**3.     Larry Cuevas**:  Officer Lavoie said no more than he stated in the February 2009 affidavit:  that Cuevas "was a *previous* customer and courier" of Alex's and that, no different than in February, Cuevas was still "in custody."  Bates 152.  Officer Lavoie did not suggest that, with the benefit of an entire month of wiretapping, there was any reason to believe that Cuevas was any more likely to be intercepted with any additional

wiretapping when he had not been intercepted during the first interception period.  There was no better showing of probable cause that Cuevas was involved in any criminal activity, that he was likely to talk about such activity over the telephone, or that he ever communicated with anyone over the targeted telephones.  18 U.S.C. § 2518(3)(a), (b), (d).

      **4.**     **Gabriel Macias**: In support of his request to continue seeking to intercept Macias's conversation Officer Lavoie repeated the same information from August 2008 that was inadequate for a wiretap in February 2009.[8]  Not only was that information insufficient to establish probable cause in February 2009 that Macias was engaged in ongoing criminal activity, was likely to use the target telephone, or communicated about criminal activity over any telephone, but all that information was now another month older and less informative as to Macias's current activities.  In addition to being inadequate in the first place and now stale, after an entire month of additional wiretapping, law enforcement failed to encounter a single instance where Macias was intercepted speaking on any of the target telephones, let alone speaking about any criminal activity.

      Having failed to establish probable cause that Macias was still engaged in criminal activity for which wiretapping would be authorized, 18 U.S.C. § 2516, 2518(3)(a), that Macias ever communicated over the target telephones, § 2518(3)(d), or was likely to talk about those alleged activities over any telephone, § 2518(3)(b), the government had no right to intercept Macias's conversations.

      **5.**     **Paul Onsurez** and **Shawn Young**: Officer Lavoie offered no new information to justify the continued wiretapping of Paul Onsurez or Shawn Young.[9]  Just

---

[8.] Macias was believed to be under the influence of heroin when detained during a traffic stop, was in possession of heroin and cocaine, had some paper with nondescript "handwritten notes" on them, and, back in August 2008, spoke on the phone with someone (Hoyos) who Alex knew. Bates 209-10.  See also Bates 082-83.

[9.] The original application provided only the "belie[f]," unsupported by any specific facts, that Onsurez and Young were couriers for Alex, Bates 034-035, conclusions repeated in the March 2009 application, Bates 153-54, without any further elaboration.

like the previous application, Officer Lavoie never even mentioned Onsurez or Young in the remainder of the affidavit after stating that they were among the individuals whose conversations the government wanted to intercept.

In addition to the fact that no additional information was provided about Onsurez or Young is the fact that, after an additional month of wiretapping, neither Onsurez nor Young were ever caught by government agents engaging in any illegal activity, talking on the target telephones, or talking on any phone about illegal activity.

Having failed to establish probable cause that Onsurez or Young were engaged in criminal activity, that either ever used or communicated over the target telephones, or was likely to talk about the hypothesized crimes over any telephone, the government had no right to attempt to intercept their communications.  18 U.S.C. § 2518(3)(a), (b), (d).

**6.**    **Richard "LNU"**: Officer Lavoie offered no new information to justify the ongoing attempt to intercept telephone conversations with Richard LNU.[10]  The information that had been presented was now another month older and out of date and no new information had been learned about him.  There was no evidence that Richard had been intercepted during an entire month of wiretapping activity, that his name had even been mentioned during any intercepted phone call, or that he was any more likely to have access to any of the targeted telephones in the future.

**7.**    **Ray "LNU"**: Officer Lavoie offered no new information to justify the continued attempt to intercept Ray's telephone conversations.[11]  There were still no facts regarding Ray's use of any telephones, let alone the target telephones, let alone that he would communicate any information over the phone that was related to the investigation.

---

[10]. No different than in the February affidavit, he was idenitifed as "a *former* customer" of Alex's," and someone who knew someone who knew Alex.  Bates 153.  The only telephone conversation that Richard had been involved in was when he called to report he had been robbed, Bates 172, a singular instance that was now 2½ months in the past.

[11]. As before, Ray was assumed to be a "customer" but the affidavit was devoid of any facts from which the judge could reach that conclusion.  Bates 153.  He was also identified as "a friend of Shawn Young," with no further information that might explain why this fact would give rise to probable cause to conclude he was engaged in illegal activity.  Bates 153.

18 U.S.C. § 2518(3)(a), (b), (d).

**8.    Mario "LNU"**:  Officer Lavoie offered no new information to justify a continued effort to intercept conversations with "Mario."[12]  After an entire month of wiretapping, no conversation of Mario's was intercepted.  No mention was made of Mario.  Law enforcement apparently knew no more about Mario in March 2009 than they had in February 2009 or, for that matter, in January 2009.  There was a lack of probable cause that Mario was actually involved in the target offenses or was likely to communicate about them over the target telephones during the forthcoming interception period.  18 U.S.C. § 2518(3)(a), (b), (d).

**9.    Patrick Orosco**:  Other than affirming that Orosco continued to be in regular telephone contact with Alex, Bates 177, the March 2009 affidavit presented no new fact that tended to suggest any illegal activity by Orosco.[13]  Given the ongoing contact between Orosco and Alex and the ongoing interceptions of Alex's calls, the affiant's failure to suggest that law enforcement ever intercepted Orosco speaking to Alex about any criminal activity during the entire month of prior wiretapping is striking evidence that no probable cause existed to intercept Orosco's conversations.  18 U.S.C. § 2518(a), (b).

**10.    Sara Misquez**:  Officer Lavoie suggested no new fact regarding Sara Misquez tending to confirm any ongoing criminal activity or communications over the target telephones.  This is not surprising since, like Cuevas, she was identified as a target subject even though she was still "presently in custody."  Bates 151.  Officer Lavoie did not suggest that there had been any change in her status or relationship to Alex as anything other than "a *previous* courier for Alex."  Bates 151.  Officer Lavoie did not suggest that Misquez had been intercepted communicating over the target telephones at

---

[12.] The only fact provided was that Mario was a customer of someone else who was connected to Alex, but no information that Mario ever had any contact or communication with Alex or anyone else over the targeted telephones.  Bates 153, 173.

[13.] Officer Lavoie hypothesized, as he did in February, that Orosco was "believed to be a narcotics courier for Alex[]" but still provided no facts to support that conclusion.  Bates 152.

any time during the entire month of additional wiretapping nor identify any facts suggesting there was any basis for anticipating any communication by her over the target telephones at any time in the future.  The affidavit failed to establish probable cause that Misquez was involved in the target offenses, was likely to speak about the target offenses, or was communicating over the target telephones.  18 U.S.C. § 2518(a), (b), (d).

**11.    Juan Diaz:** Officer Lavoie's affidavit established only that Diaz spoke with Navarro about twice a day over Navarro's phone and that, like Navarro, Diaz was a member of the Black Angels.  Bates 154, 182-83.  Officer Lavoie "believe[d]" that Diaz's conversations related to "criminal activity of the Ontario Black Angeles" but offered no facts indicating that Diaz participated in any such alleged criminal activity, had any basis for knowing about the criminal activity, or any foundation from which one could reasonably infer that Diaz would be talking about these matters.

Diaz's alleged membership in the Black Angels was an insufficient demonstration of probable cause of any criminal activity.  Merely being a member of an organization that law enforcement characterized as a "gang" is not a crime under California law, *People v. Gardeley*, 14 Cal.4th 605, 623, 59 Cal.Rptr.2d 356, 927 P.2d 713 (1996), or under federal law, *cf.* 18 U.S.C. § 1959, 1962 (criminalizing violent crimes in aid of racketeering and controlling an organization through a pattern of racketeering).  Moreover, "the First Amendment protects an individual's right to join groups and associate with others."  *Dawson v. Delaware*, 503 U.S. 159, 163, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992).  Officer Lavoie did not submit any facts indicating that Diaz himself was participating in any criminal activity, was aware of any criminal activity, or spoke with Navarro about any criminal activity.

Devoid of any facts demonstrating that Diaz was engaged in criminal activity, § 2518(3)(a), and communicated about criminal activity overt the phone, § 2518(3)(b), the affidavit was devoid of probable cause to expand the scope of the search to listen in on Diaz's conversations.

**12.    Unidentified Male**: Law enforcement added an additional pseudonymous

individual, "UM" as a proposed target subject.  Law enforcement's reasons for targeting "UM" is mysterious, unless the purpose was to add a generic descriptor enabling monitoring agents to listen in longer for every male's telephone calls on the target telephones.  UM was hypothesized to be a person from whom Alex purchased narcotics of an unknown variety.  More curiously, every fact Officer Lavoie mentioned about UM not only pre-dated the March 2009 wiretap application by 2 to 6 months, but pre-dated the February 2009 wiretap application.  Bates 160-62, 198-205.  If, after an entire month of wiretapping, the only facts law enforcement could muster regarding an initial attempt to intercept "UM" were facts known long before wiretapping started, and wiretapping had not contributed one iota to law enforcement's information base about UM, the justification for seeking to intercept UM's conversations was quite weak.  18 U.S.C. § 2518(b), (d).

**Summary**: The affidavit failed to establish all three required types of probable cause for at least 13 of the 19 individuals who monitoring agents would be listening for during their electronic interception, including defendant Juan Diaz.

## IV.   The May 2009 Affidavit for Wiretap 09-38(B) Failed to Establish Probable Cause that Target Telephone #5 was Used By Navarro or Used for Conversations about Illegal Activity

Agent Lavoie sought to target the communications on Target Telephone #5 on the ostensible ground that the phone was being used by Navarro to conduct illegal activity.  Agent Lavoie provided no facts justifying his speculation on either point that could support a finding of probable cause.

Agent Lavoie acknowledged that Target Telephone #5 was not registered to David Navarro and was not registered to Navarro's address.  The agent did not offer any information that the address to which the phone was registered was in any way associated with Navarro.  Bates 291.  Whatever speculation agent Lavoie might have offered about Target Telephone #5, he ignored that David Navarro had a history of using a phone

registered in his own name and registered to his home address.  Bates 289-90.

The purported basis for probable cause that Navarro used Target Telephone #5 was pure speculation.  Agent Lavoie said that a separate wiretap investigation suggested that Alfredo Rodriguez, who was a suspected drug supplier, spoke on the phone with a person named Jose LNU about Jose's desire to purchase cars, which agents speculated might have been code for drug dealing.  Separate and apart any communications with Rodriguez, Agent Lavoie noted that Jose LNU used the same phone to talk to Rodrigues that was also occasionally used to call Target Telephone #5.  Bate 327.  Agent Lavoie had no basis for inferring that it was Jose calling Target Telephone #5, that the calls to Target Telephone #5 related to any activity that was subject to electronic interception under 18 U.S.C. § 2516, or that any such communication was with David Navarro.

## V.     The Affidavit Supporting the May 2009 Wiretap 09-38(B) Failed to Establish All Three Types of Probable Cause for Each Target

1.     The May 2009 wiretap identified the following individuals as target subjects but included absolutely no facts about them to establish (a) probable cause that they are committed or about to commit an offense subject to federal wiretapping, (b) probable cause that communications regarding that offense would be intercepted by wiretapping, or (c) probable cause that the phone being targeted was "leased to, listed in the name of, or commonly used by such person."  18 U.S.C. § 2516(a), (b), (d):

• Richard Castorena

• Larry Cuevas

• Juan Diaz

• Mario LNU

• Gabriel Allen Macias

• Paul Onsurez

• Ray Perez

2.     **Shawn Young**:  The information about Shawn Young was no more

inculpatory than in previous applications, simply his friendship with Ray Perez (as to whom no probable cause was shown) and the amorphous unsubstantiated "belief" that, at some unspecified time, he "has acted as a . . . courier for Alex[.]"  Bates 300-01.

**3.   Carmela**:  The only information about Carmela, beyond the fact that she was married to Alex, was that she may have had a bank account.  Bates 337.

**4.   Venegas, Martinez-Gonzalez, Hernandez, L. Diaz**:  Agent Lavoie offered no information about Armando Venegas, Kevin Alejandro Martinez-Gonzalez, Steven Hernandez, or Lucio Diaz beyond listing them as target subjects.[14]  The most recent information about each of these individuals was isolated incidents dating back to November 2008, six months before Wiretap 09-38(B) was being sought in May 2009.[15] Even though each had been the target of two state and two federal wiretaps since then, no information was alleged to exist that would suggest any of them had any further communication with Alex about hypothesized illegal activity or anyone else targeted on the investigation.  Bates 169-70.  There was a dearth of facts not only establishing probable cause of illegal activity but also communication about the target offenses over the target telephones.  18 U.S.C. § 2518(3)(a), (b), (d).

**5.   Misquez**:  The agent gave no information about Misquez more recent than August 2008, other than noting that Misquez was "presently in custody," as she had been for the past 9 months.  There remained no evidence that Misquez was participating in the target offenses or that she was communicating about them over the target telephones.  18 U.S.C. § 2518(a), (b), (d).

---

[14.] The only information about these four was in *prior* affidavits.  In the March 2009 application, the most recent information about Diaz, Venegas and Hernandez were isolated telephone calls on November 14, 26 and 28, respectively.  Bates 164, 169-70, 164-65.  The most recent information about Martinez-Gonzalez was that he had been subjected to a traffic stop on November 20, 2008 after which he waived *Miranda* rights, said he wanted to answer questions and was eventually released without charges on the ground that there was insufficient evidence. Bates 166-67.

[15.] Starting in the next wiretap application, the affiant would concede that Martinez-Gonzalez "has not been a source of supply for Alex since the beginning of the federal investigation in February 2009."  Bates 555, 741.

6.    **Jose LNU**:  Agent Lavoie did not identify any specific facts stating purporting to indicate that Jose LNU was involved in illegal activity of any sort.  Although reporting that a Jose Silba and Alfredo Rodriguez were the targets of a separate and entirely independent wiretap relating to a completely different investigation.  Bates 347 ¶ 3.f, the affiant stated no facts from which the wiretap judge could independently conclude this was the same Jose LNU let alone that this Jose was involved in illegal activity.  18 U.S.C. § 2518(3)(a).  The only purported corroboration was a single, isolated telephone call between Rodriguez and Jose that took place 6 weeks before the new wiretap application.  Bates 327-28.  There was no indication that any further contact occurred before or in the 6 weeks after that conversation, leaving to pure speculation the hypothesis that Jose would communicate over the target telephone in the upcoming one-month wiretap period.  18 U.S.C. § 2518(b), (d).

7.    **Cabezon**: Agent Lavoie reported that, a week before the May 1, 2009 wiretap application, 09-38(B), an informer told another officer that a person named "Robert" "drives vehicles also used by Alex."  Bates 333-34.  Agent Lavoie further hypothesized, based on foundation never elucidated, "I believe that 'Robert' is Target Subject Cabezon."  Bates 334.  In addition to the fact that there is absolutely no factual foundation for the assumption (and assertion) that Cabezon and Robert are one and the same person, the wiretap judge was provided with absolutely no information from which to reliably assess whether the informer was credible or reliable.  *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).  Indeed, Agent Lavoie's only comments about this informer was his observation that he "did not recognize any of the telephone numbers" on the informer's phone "as belonging to individuals that have communicated with Alex," that "this confidential has limited information" and that Agent Lavoie "was unable to corroborate the information this confidential informant provided."  Bates 334.  There was no probable cause that Cabezon was involved in the target offenses.  18 U.S.C. § 2518(3)(a).

8.    **UM/SOS**: Although suspecting that a "UM" had previously worked with

Alex, Agent Lavoie advised the wiretap judge that "UM/SOS may have recently been arrested and deported to Mexico."  Bates 302.  Agent Lavoie provided no basis for inferring that there was any continued communication between the two after "UM's" arrest, let alone since his deportation.  18 U.S.C. § 2518(a), (b), (d).

9.      **Jose Gutierrez & Gilberto Gutierrez:** Jose and Gilberto Gutierrez were subjected to a traffic stop on March 31, 2009, a month before the wiretap application 09-38(B) on May 1, 2009.  After a consensual search revealed no contraband, both willingly spoke to police after waiving their *Miranda* rights.  Gilberto was released based on finding insufficient evidence to arrest and Jose was taken into custody on an immigration hold.  Bates 317.  These facts fall far short of probable cause that they were involved in the target offenses.  18 U.S.C. § 2518(a).

10.     **Steve Hoyos**: Hoyos was arrested on March 21, 2009, nearly 6 weeks before Agent Lavoie applied for the 09-38(B) wiretap on May 1, 2009.  Bates 313-14, 334-36.  Hoyos was still in custody when the May 1, 2009 wiretap was sought.  Regardless of any previous misconduct, there was no showing of probable cause that Hoyos would be communicating over the target telephones to talk about the target offenses, especially while being held in custody.  18 U.S.C. § 2518(3)(b), (d).

**Summary:**  Agent Lavoie provided no information suggesting that *any* of the foregoing individuals was "commonly used" – or was likely to use in the future – any of the target telephones.  18 U.S.C. § 2518(3)(b), (d).  The affiant failed to establish all three elements of probable cause to intercept the electronic communications of defendants Juan Diaz and Santacruz Silva (a.k.a. Jose LNU) and, overall, 20 of the 25 target subjects.

## VI.    The Affidavit Supporting the May 2009 Wiretap 09-38(C) Failed to Establish All Three Types of Probable Cause for Each Target

Four months after the first wiretap purporting to focus on the Black Angels, Agent Lavoie added several new individuals to the wiretap who were ostensibly associated with the group.  Once again, however, there was no evidence that law enforcement had

developed *any* of the *three* required types of probable cause necessary to target them in the wiretap.

    **1.**    **Armando Barajas**: On May 10, 2009, Barajas was allegedly intercepted speaking to Navarro.  Law enforcement noted only three subjects of conversation: (1) what they were doing for Mother's Day, (2) a "girl" of a "home boy" who was trying to get a lawyer, to which Barajas suggested contacting "all the little homies to see how much they could all pitch in . . . [so] they could get a lawyer," with the hope that, if they ran out of money, the lawyer might continue working on the case anyway or "maybe the court could help" and (3) that Barajas "was smoking" "a little," which Agent Lavoie speculated could have been talking about smoking marijuana.  Bates 446-47.  The first two subjects are not evidence of any crime and, even if the Agent correctly speculated that the third subject was discussion about smoking marijuana, that is not an "offense" that is a proper target offense for a wiretap.  18 U.S.C. §§ 2516, 2518(3)(a).

    Moreover, the conversation came about when Reyes called Navarro and, during the conversation, Navarro happened to ask the person who called if Barajas was present with Reyes.  Agent Lavoie offered no evidence that Reyes and Barajas were regularly together or that there was any basis for inferring that Barajas regularly spoke with Navarro.  Indeed, after having wiretaps on Navarro's phone since February 2009, Agent Lavoie gave no indication that Barajas had ever before spoken on Navarro's phone before the June 2009 wiretap application, 18 U.S.C. § 2518(3)(d), or that there was any basis for concluding there was probable cause to believe he was likely to engage in any conversation in the future regarding criminal conduct that is subject to electronic interception, 18 U.S.C. § 2518(3)(b).

    **2.**    **Daniel Reyes**: Daniel Reyes made a single telephone call to Navarro.  When Navarro said he was relaxing, according to Agent Lavoie's translation, Reyes said that "maybe Navarro could take some [marijuana] when Navarro went over" to some unidentified gathering.  Bates 446.  Even assuming Agent Lavoie was correct that Reyes was referring to marijuana, there was no suggestion that Reyes was discussing any crime

1   that was subject to electronic interception.  18 U.S.C. § 2516.  Nor was there any

2   showing that Reyes had any regular communication with Navarro, let alone that there

3   was probable cause that he would be having conversations about any criminal conduct

4   over Navarro's phone in the future.  18 U.S.C. § 2518(3)(b), (d)

5       **3.    Juan Gil**: Agent Lavoie identified Juan Gil as an individual "currently

6   incarcerated in an unknown federal institution."  Bates 427 ¶ 22.ee.  Agent Lavoie

7   asserted his "belie[f]" that Navarro paid  some of the extortion money he collected to

8   Gil's wife or to Gil himself.  Bates 427, 436.  Agent Lavoie provided no factual

9   foundation to support that belief nor did he provide any basis for imputing to Gil or his

10  wife the nature of the proceeds delivered to her by Navarro, let alone Gil's knowledge

11  thereof.  No less importantly, Agent Lavoie provided the wiretap judge with absolutely

12  no facts suggesting that Juan Gil ever used any of the target telephones.  Given the dearth

13  of facts sufficient to establish probable cause that Gil was involved in any offense,

14  combined with the complete absence of any indication that he ever used or had access to

15  the target telephones, no reasonable wiretap judge could have concluded that there was a

16  basis for intercepting Gil's communications.  18 U.S.C. § 2518(3)(a), (b), (d).

17      **4.    "M"**: Identified only as "an individual incarcerated in an unknown facility

18  that [sic] communicates with Navarro," the affiant suggested that a single conversation

19  on an unspecified date occurred where they "discussed a *possible* [homicide]."  Bates

20  427.  "In dealing with probable cause, however, as the very name implies, we deal with

21  probabilities."  *Brinegar*, 338 U.S. at 175; accord *Illinois v. Wardlow*, 528 U.S. 119, 127,

22  120 S.Ct. 673, 145 L.Ed.2d 570 (2000).  "The substance of all the definitions of probable

23  cause is a reasonable ground for belief of guilt."  *Brinegar*, 338 U.S. at 175.  It "mean[s]

24  *more* than bare suspicion."  There was no "probable cause for belief that ["M" was]

25  committing, has committed, or is about to commit a particular offense."  18 U.S.C. §

26  2518(3)(a).  Having identified only the single telephone call by "M" – on an unspecified

27  date and therefore having no reference in time that it was reasonably contemporaneous to

28  the wiretap – there remained an absence of " probable cause for belief that particular

25

communications concerning that offense will be obtained," 18 U.S.C. § 2518(3)(b), or the existence of "probable cause for belief that the [telephone being targeted] . . . are leased to, listed in the name of, or commonly used by such person," 18 U.S.C. § 2518(3)(d).

5.     Agent Lavoie made reference to no facts whatsoever in the body of the affidavit purporting to establish any of the three required probable cause showing for any of the following individuals:

- Richard Castorena
- Larry Cuevas
- Juan Diaz
- Lucio Diaz
- Victor Felix
- Steven Hernandez
- Mario LNU
- Gabriel Macias
- Kevin Alejandro Martinez-Gonzalez
- Paul Onsurez
- Jose LNU/Santacruz Silva
- Armando Venegas

6.     **Teresa Castro (Osita):** After obtaining a wiretap on Teresa Castro in May 2009, 09-38(B), law enforcement did not suggest in their June 17, 2009 application that they had developed any evidence from the earlier wiretap that Castro had any ongoing or continued involvement or association with anyone under investigation nor that she was ever capture on any of the target telephones.  Indeed, Agent Lavoie conceded that, at that time, Castro was now "a *former* street level dealer for Alex."  Bates 425.[16]

---

[16.] To the extent law enforcement believed that a wiretap was justified because money was ostensibly being extorted from Castro, the suggestion would be an unfounded extension of the wiretap laws to allow law enforcement to *target* a person's private conversations on the suspicion that they *might* be the victim of a crime.  18 U.S.C. § 2518(3)(a) only allows targeting only the suspected criminal.  If law enforcement genuinely believed Castro was being

26

7.     **Salvador Martinez**: The affiant asserted his belief that Martinez "is a street level narcotics dealer" but offered no specific fact to support a finding of probable cause that Martinez was in fact engaging in narcotics trafficking.  Indeed, the affiant even admitted that, in the one phone call intercepted a month before the wiretap, Martinez was saying "he had not been working all week and might not work" anymore.  Bates 448. This phone call occurred over a month before law enforcement applied for the June 2009 wiretap and there was no further evidence that, either before or during the following month, Martinez was ever again involved in any illegal activity or that he communicated over the targeted telephones.  Law enforcement made no showing of probable cause that "particular communications" concerning any offense Martinez may have been involved in "will be obtained through such interception" or that any of the targeted telephones were "commonly used by" him.  18 U.S.C. § 2518(3)(b), (d).

8.     **Misquez and Hoyos**:  Misquez and Hoyos were both still in custody at the time of the June 17, 2009 wiretap application 09-38(C).  There was no indication that either remained in contact with any individual targeted by the investigation, let alone in telephone contact.  18 U.S.C. § 2518(3)(b), (d).

9.     **Ray Perez**: On May 26, 2009, three weeks before the June 17, 2009 wiretap application, 09-38(C), Alex was intercepted declaring unambiguously that "he 'did not want to work with Ray [Perez].'"  Bates 440.  Alex made unmistakably clear that he did want not to associate "with the guys that just got out of jail because they were being watched."  Bates 440.  Alex categorically rejected having any future contact with Ray.  The affidavit did not suggest that there had been any contact or communication between Perez and Alex (or Navarro or anyone else targeted by the investigation) during the three weeks after that isolated phone call leading up to the time law enforcement sought the June 17, 2009 wiretap, 09-38(C).  Regardless of what the situation might have been hypothesized to be months earlier, as of June 17, 2009, there was no factual

---

victimized, law enforcement could properly target the victimizer's phone calls.  18 U.S.C. § 2518(3).  While they might incidentally intercept her phone conversations with the victimizer,

foundation of probable cause that Perez was participating in the target offenses, that he would be communicating about those hypothetical crimes with Alex (or anyone else), or that there was probable cause that he would be communicating with Alex (or anyone else) over either of the target telephones.  18 U.S.C. § 2518(3)(a), (b), (d).[17]

10.    **Shawn Young**: No new information was provided about Shawn Young.  Bates 422.

11.    **Carmela**: No new information was provided about Carmela.  Bates 468.

12.    **Cabezon**: Agent Lavoie asserted that law enforcement anticipated Cabezon would be delivering drugs to Alex and Orosco but, after observing a meeting between the three of them, stopped the latter and found no drugs in their possession.  Bates 460.  Regardless of law enforcement's suspicion that the drugs may have been concealed, Agent Lavoie identified no facts that the person Alex and Orosco had met with was Cabezon or, more importantly, that Cabezon ever used any of the target telephones.  18 U.S.C. § 2518(3)(a), (b), (d).

13.    **Jose Gutierrez & Gilberto Gutierrez**: Having previously acknowledged that Jose Gutierrez was detained on an immigration hold and that both Jose and Gilberto Gutierrez were released from criminal custody after waiving their *Miranda* rights and voluntarily answering questions, the only new fact was that someone driving Gilberto's car (but not necessarily Gilberto himself) parked in the driveway of Alex's house on May 19, 2009, a month before the new wiretap.  Agent Lavoie did not suggest that either of the Gutierrez's had been seen with any other suspect or intercepted talking on any of the target telephones.  There was no probable cause that either Gutierrez was involved in the target offenses or communicating about them over the target telephones.  18 U.S.C. § 2518(a), (b), (d).

---

law enforcement could not properly *target* all her conversations for interception.

[17.] In addition to the lack of relevant new information, law enforcement conceded that Misquez, Hoyos, Hernandez, Cuevas, Castorena, and Castro were all "former" and "previous" contacts of Alex and had no ongoing communication with any individual under investigation.  Bates 420-21.  Their situation was the antithesis of probable cause that they might be in communication over the

14.     **Red Eye**: Agent Lavoie identified a single telephone communication between Alex and "Red Eye" that occurred three weeks before law enforcement applied for the June 2009 wiretap.  The affidavit nowhere suggests any facts upon which one could conclude that Red Eye had ever communicated with Alex before May 26, 2009 or that he had ever communicated after May 26, 2009 in the three weeks preceding the June 17, 2009 wiretap.  There was a failure of "probable cause for believe that particular communications concerning [any offense Red Eye might be involved in] will be obtained through such interception" and a complete absence of "probable for belief that the [telephone to be intercepted] . . . [were] leased to, listed in the name of, or commonly used by [Red Eye]."  18 U.S.C. § 2518(3)(b), (d).

15.     **Deborah Cortez and Roberto Sosa**: Nearly three weeks before law enforcement applied for the June 2009 wiretap, 09-38(C), Cortez and Sosa were arrested. Bates 453, 467.  The affiant offered no evidence to support a finding of probable cause that either had any communication with Alex or any other individual under investigation after their arrest let alone had access to or communicated over the targeted telephone.  18 U.S.C. § 2518(b), (d).

16.     **Victor Carrasco Felix**: Despite two months of wiretapping, the affiant identified only a single episode, a telephone communication followed by a traffic stop, after which Felix was released without charges, two months before the June 17, 2009 wiretap application.  Regardless of whether the probable cause that Felix was committing an offense was stale, especially in light of the absence of any intercepted communications by Felix in the preceding two months, the affiant presented no facts to establish probable cause that Felix was likely to communicate over the target telephone in the future.  18 U.S.C. § 2518(b), (d).

**Summary**: Law enforcement failed to establish probable cause for wiretapping defendants Armando Barajas, Juan Gil, Juan Diaz, Daniel Reyes, Salvador Martinez, Jose LNU (a.k.a. Santacruz Silva) and, overall, 30 of the 34 persons identified as target

telephone with any of the target subjects.

1    subjects.

2

3    **VII.    The Affidavit Supporting the July 2009 Wiretap 09-38(D) Failed to Establish**

4    **All Three Types of Probable Cause for Each Target**

5           Further Black Angels Investigation:

6           **1.    Juan Diaz**: Over the past four months since March 2009, Agent Lavoie

7    repeatedly stated nothing more than that Diaz was a member of the Black Angels but,

8    despite five months of wiretapping on Navarro, had no further concrete factual

9    information implicating Diaz in any criminal activity.  The affiant stated that he "believed

10   that Diaz was communicating with Navarro" but consistently admitted from March

11   through July that "Diaz's telephone number has not been identified" so his basis for that

12   assumption relied entirely on speculation.  The affiant further stated that he assumed that

13   the communications (which he assumed took place) were "regarding the criminal activity

14   of the Ontario Black Angels" but simultaneously admitted that only basis for that

15   assumption was a "review of previous toll information" on a former phone of Navarro's,

16   demonstrating that not only was the information stale but he never had any information

17   about the substance or topics discussed (assuming there even were communications

18   between the two).  Compare Bates 302 with Bates 558.  The facts stated by the affiant

19   failed to demonstrate probable cause (a) that Diaz was, had been, or would be involved in

20   any criminal activity, or, despite five months of wiretapping, (b) that Diaz might

21   communicate about any of the hypothesized crimes over the phone or (c) that Diaz

22   "commonly used" any of the target telephones.  18 U.S.C. § 2518(3)(a), (b), (d).

23          **2.    Juan Gil**: Despite a continuous 30 days of wiretapping, the only

24   information known about Gil was that he was incarcerated at U.S.P. Hazleton, Bates 561-

25   62, a fact that law enforcement was more likely to have determined through conferring

26   with agents at B.O.P. than through the wiretap.   The affiant failed to demonstrate

27   probable cause that Gil was involved in any ongoing criminal activity in June 2009 and

28   the same was true in July 2009.  18 U.S.C. § 2518(3)(a).  Indeed, despite five months of

wiretapping and the last 30 days during which Gil was an identified target, the affiant did not suggest that law enforcement had ever overheard Gil communicating over the target telephones.  The affiant equally failed to demonstrate probable cause that Gil "commonly used" the targeted telephone or was likely to communicate over them about the offenses that were the target of the investigation.  18 U.S.C. § 2518(3)(b), (d).

**3.      Carlos Vasquez**: After four months of wiretapping Navarro, Agent Lavoie identified only a single telephone conversation between Navarro and Vasquez that occurred on June 24, 2009, three weeks before the July 17, 2009 wiretap application, 09-38(D).  Bates 618.  Elsewhere, the affiant asserted that Vasquez was "observed by surveillance to be present with Navarro" and that Vasquez was "regularly in contact with Navarro" but stated no facts indicating that Vasquez regularly contacted Navarro by telephone, let alone over target telephone, or regularly communicated with Navarro over the target telephone about the target offenses.  Bates 563.  The affidavit failed to demonstrate probable cause that intercepting Vasquez "commonly used" Navarro's target telephone or that he "communicat[ed] concerning that [target] offense" over the target telephone.  18 U.S.C. § 2518(3)(b), (d).

**4.      Fernando Morales**: The affiant stated Black Angels member Paul Rodriguez was murdered and that fellow member Fernando Morales "was *one of* the last subjects to be seen with Rodriguez prior to the homicide."  Bates 573.  Although Agent Lavoie asserted that Morales was "suspected" of Rodriguez's murder, the affiant stated no facts – other than the highly ambiguous and abstract assertion that Morales was "one of the last" people seen with Rodriguez – that would demonstrate "probable cause" that Morales had any role in the homicide.  The affiant did not state how much time might have elapsed between their time together and Rodriguez's death nor who else Rodriguez was seen with after he parted from Morales or why Morales was still a suspect.  The affiant affirmed that Morales had not been charged with the homicide and, indeed, no homicide charges had been filed.  Bates 563.  The application did not demonstrate probable cause that Morales was guilty of any offense.  18 U.S.C. § 2518(3)(a).

Furthermore, Agent Lavoie disclosed that, as of the time of the wiretap application, Morales was "in custody for leading police on a vehicle pursuit." Bates 563, 573. The affiant identified no facts tending to suggest that, despite 4 months of wiretapping activity, Morales had ever spoken to anyone over the target telephones in the past or was likely to do so in the future, let alone to talk about the target offenses over those telephones, especially now that he was in custody. 18 U.S.C. § 2518(3)(b), (d).

**5.** **Fernando Lopez**: The affiant stated only that he "believe[d]" that Lopez "*possibly* sells narcotics, and assists in collecting extortion payments." Bates 564. A factually unsubstantiated "belief" does not establish probable cause. *Gates*, 462 U.S. at 239. The belief that there exists only an abstract "possibility" of criminal conduct, much short of a demonstrable probability, falls far short of probable cause. *Brinegar*, 338 U.S. at 175; *Wardlow*, 528 U.S. at 127. The showing failed to demonstrate probable cause of criminal activity. 18 U.S.C. § 2518(3)(a). Although the affiant stated that his belief was "based on intercepted conversations" over Navarro's telephone, Bates 564, the affiant failed to provide the wiretap judge with any factual basis for concluding that Lopez was himself participating in the telephone calls (as opposed to simply being an individual discussed by others), thereby filing to establish probable cause that Lopez would be captured communicating over the targeted phone about the target offenses. 18 U.S.C. § 2518(3)(b), (d).

**6.** **Marlon Jiron**: The affiant represented that, after an interview on June 23, 2009, "Jiron and his girlfriend Jessica Perez . . . [were] considered to be cooperating witnesses." Bates 614. The affiant stated that Navarro spoke to two other individuals over the target telephone about a search at Jiron's home, Bates 574, 581, 605, but provided no facts tending to suggest that Jiron himself ever communicated over the target telephone, let alone communicated over that phone about the target offenses. 18 U.S.C. § 2518(3)(b), (d).

**7.** In addition to the foregoing, the affidavit also failed to provide *any* factual basis for targeting the communications of "**Rude Boy**," "**Boxer**," "**El Oso**." Both were

simply identified as target subjects and never again mentioned or alluded to in the body of the affidavit.  The affidavit did even so much as describe Rude Boy's, Boxer's or El Oso's suspected roles in the offenses under investigation.  Bates 543.  Law enforcement failed to demonstrate any type of probable cause as to either of these individuals.  18 U.S.C. § 2518(3)(a), (b), (d).

      **8.**    The affidavit advanced no new information about the following individuals, as to whom there was no probable cause earlier and any information previously developed was now stale:

- Teresa Castro
- Larry Cuevas
- L. Diaz
- Gilberto Gutierrez
- Jose Gutierrez
- Steven Hernandez
- Carmela LNU
- "M"
- Gabriel Macias
- Sara Misquez
- Paul Onsurez
- Patrick Orosco
- "Red Eye"
- Armando Venegas
- Shawn Young[18]

      **9.**    **Deborah Cortez & Roberto Sosa**: No further showing of probable cause

---

[18.] In addition to the lack of relevant new information, law enforcement conceded that Castorena, Castro, Cuevas, Felix, Hernandez, Hoyos, Misquez, Perez were all "former" and "previous" contacts of Alex and had no ongoing communication with any individual under investigation.  Bates 555-.  Their situation was the antithesis of probable cause that they might be in communication over the telephone with any of the target subjects.

was made as to Cortez or Sosa.  Quite the contrary, the affiant reported that, since they were released from custody, "To our knowledge, [Cortez] has not been in contact with Alex" and "To our knowledge, [Sosa] has not been in contact with Alex" either.  Bates 560.  There was a complete absence of probable cause to include Cortez or Sosa as persons still involved in criminal activity, likely to communicate over the target telephones, or likely to communicate about the target offenses.  18 U.S.C. § 2518(3)(a), (b), (d).

10.     **Kevin Alejandro Martinez-Gonzalez a.k.a. Chipo**: Agent Lavoie dropped an even more explosive bombshell on his probable cause showing as to Martinez-Gonzalez as well.  Agent Lavoie admitted, for the first time after five months of wiretapping, that Maritnez-Gonzalez "has not been a source of supply for Alex since the beginning of the federal investigation in February 2009."  Bates 555.

11.     **Cabezon**: The affiant stated that "based on intercepted calls," he "believe[d] that Cabezon assists Alex."  Bates 557.  The affiant did not clarify when the calls had been intercepted, what specifically was said on the calls leading the affiant to that "belief," nor did he provide any facts as to the nature of Cabezon's supposed "assistance," such as whether it involving knowing criminal activity or merely incidental assistance (like fixing a flat tire or lending a cup of flour) that a person would not realize directly assisted another's criminal activity.  18 U.S.C. § 2518(3)(a).  Equally significant, although the conclusion was "based on intercepted calls," the affiant did not provide the wiretap judge with any specific facts indicating that Cabezon was actually a participant in the intercepted calls as opposed to simply being talked about by others on the call.  Devoid of showing that Cabezon was likely to use the target telephone and discuss any illegal activity, there was no probable cause to allow law enforcement to eavesdrop on the phone until they could confirm that Cabezon was not one of the speakers.  18 U.S.C. § 2518(3)(b), (d).

12.     **Richard Castorena**: Not only was Castorena described as a "former" contact of Alex's, but the July 17, 2009 wiretap affidavit finally acknowledged that

Castorena had been arrested on March 20, 2009.  Bates 570.[19]  The affiant identified no facts tending to suggest that, despite 4 months of wiretapping activity, Castorena ever spoke to anyone over the target telephones in the past or was likely to do so in the future, let alone to talk about the target offenses over those telephones, especially now that he was in custody.  18 U.S.C. § 2518(3)(b), (d).

13.  **Mario LNU**: The only information about Mario was that he "has been intercepted" talking to Alex on the target telephones.  Bates 556.  The affiant provided no information as to when the intercepted conversations took place so there was no basis for inferring that Mario would continue to be in communication with Alex.  18 U.S.C. § 2518(3)(b), (d).  Although asserting that Mario "is a customer of Alex's," the affiant provided no specific facts to support that conclusion or the inference that he was purchasing contraband as opposed to, for example, nursery supplies.  18 U.S.C. § 2518(3)(a).

14.  **Octavio Pena**: The only fact relayed about Pena was that he was subjected to a traffic stop during which "narcotics were *not* seized."  Bates 571.  The affiant stated no other specific facts implicating Pena in any criminal activity besides the hypothesis that he was a "suspected source" of drugs to Alex.  The suspicion, unsupported by specific facts, failed to demonstrate probable cause of any criminal activity on Pena's part.  *Gates*, 462 U.S. at 239.  In addition, the affiant provided no facts that Pena had ever communicated over the target telephone with any of the target subjects about any of the target offenses.  There was no probable cause for believing he would communicate over the target phones about the target offenses in the future.  18 U.S.C. § 2518(3)(b), (d).

15.  **Rebecca Estrada**: Although stating his belief that Estrada sold narcotics, the affiant stated no specific facts to support that conclusion.  While claiming that the belief was "based on intercepted communications," the affiant did not identify the time, place, or substance of any of those communications that might have enabled the wiretap

---

[19.] This critical fact was not disclosed in either the May 1, 2009 or June 17, 2009 wiretap affidavits.

35

judge to make that independent determination.  Bates 564.  This failed to demonstrate probable cause of a criminal offense.  *Gates*, 462 U.S. at 239; 18 U.S.C. § 2518(3)(a).[20]  Moreover, the affiant stated no facts suggesting that Estrada ever communicated over the target telephones, let alone communicated over the target telephones about the target offenses.  There was no showing of probable cause as to these two elements either.  18 U.S.C. § 2518(3)(b), (d).

16.    **Ray Perez**: In addition to being identified as a "former customer" and "former narcotics distributor," Bates 557, who the affiant reported Alex had adamantly refused to work with, Bates 440, Perez was now also in custody for other charges.  Bates 571.  Regardless of what may have been the case earlier, as of July 17, 2009, there was no factual foundation of probable cause that Perez was engaging in illegal activities, that he would be communicating about those hypothetical crimes with Alex (or anyone else), or that there was probable cause that he would be communicating with Alex (or anyone else) over either of the target telephones.  18 U.S.C. § 2518(3)(a), (b), (d).

**Summary**: The affidavit fails to establish all three required elements of probable cause for the wiretapping of defendants Juan Gil, Juan Diaz, Fernando Lopez, Marlon Jiron, Fernando Morales, Carlos Vasquez, Rebecca Estrada, and for 33 of the 46 target subjects overall.

## VIII.  The Affidavit Supporting the August 2009 Wiretap 09-38(E) Failed to Establish All Three Types of Probable Cause for Each Target

1.    **Juan Gil**: Beyond the information previously developed that failed to establish probable cause that Gil was involved in any of the target offenses, law enforcement conducted a mail cover at his wife's home and developed no further leads as

---

[20.] The affiant noted that Estrada might also have been an extortion victim, but that being a victim is not a crime.  Law enforcement has no authority to *target* the communications of a victim, only those of the victimizer.  18 U.S.C. § 2518(3)(a).  While they might incidentally intercept her phone conversations with the victimizer, law enforcement could not properly *target* all her conversations for interception.

36

1    to Gil.  Bates 806.  Having failed to establish probable cause of a crime previously, law

2    enforcement still failed to establish probable cause of any ongoing criminal activity by

3    Gil, especially since the information previously provided was now stale.  18 U.S.C. §

4    2518(3)(a).  Moreover, despite six full months of wiretapping including two months

5    where Gil was listed as a specifically identified target subject, law enforcement had still

6    failed to intercept a single instance of Gil communicating over the target telephones.  The

7    affidavit therefore fails to establish probable cause that he "commonly used" the target

8    telephones or was likely to communicate anything regarding the target offenses over

9    them.  18 U.S.C. § 2518(3)(b), (d).

10          **2.     Carlos Vasquez**: The affiant supplied the wiretap judge with no new facts

11   regarding Vasquez except that he had been arrested for the robbery of a liquor store on

12   August 1, 2009.  Bates 796.  Both prior to the robbery and in the intervening two weeks

13   thereafter, law enforcement did not intercept any communications by Vasquez over any

14   of the target telephones and provided the wiretap judge with no facts suggesting that,

15   after Vasquez's arrest, this was in any way likely to change since he was now in custody.

16   The affidavit failed to establish probable cause that he would be communicating over the

17   target telephones and that he would do so regarding one of the target offenses.  18 U.S.C.

18   § 2518(3)(b), (d).

19          **3.     Adolph Moraga**: Besides being a member of the Black Angels, which is

20   not itself a state or federal crime, *Gardeley*, 14 Cal.4th at 623, the affiant reported that

21   other unidentified people alleged that Moraga was "involved in the collection of extortion

22   payments."  Bates 751.  The affiant did not disclose who provided this information, what

23   the people said, or when they allegedly said it.  There was nothing, apart from the

24   affiant's bare conclusion, that Moraga was involved in any criminal activity.  *Gates* 462

25   U.S. at 293; 18 U.S.C. § 2518(3)(a).  Although asserting that the conclusion was "based

26   on intercepted conversations" over the target telephones, the affiant gave the wiretap

27   judge no factual basis for concluding that Moraga himself was on any such phone calls,

28   that there was any basis for believing Moraga would be communicating over the target

1    telephones at any time in the future, or that he would be communicating over any

2    telephone regarding the target offenses.  18 U.S.C. § 2518(3)(b), (d).

3       **4.**    **Raul Prieto:** The only information relayed to the wiretap judge about Raul

4    Prieto was that, a month before the current wiretap application, Carlos Rivera went into

5    Prieto's home and hid a gun inside.  Bates 752.  Despite months of wiretapping, the

6    affiant did not suggest that Prieto was ever intercepted communicating with any other

7    target subject over any of the target telephones regarding any of the target offenses.

8    There was no probable cause to identify Prieto as a target subject likely to communicate

9    over the target telephones about the target offenses.  18 U.S.C. § 2518(3)(b), (d).

10      **5.**    **Michael Sanchez:** The only criminal activity imputed to Sanchez was

11   participation in the liquor store robbery along with Vasquez on July 29, 2009.  Bates 751,

12   760.  The affiant provided no facts to suggest that Sanchez had been intercepted on any

13   target telephone either before or after the liquor store robbery nor that there was probable

14   cause to believe that he would be communicating about that activity over the target

15   telephone (or any telephone), especially now that he was being detained in custody.  18

16   U.S.C. § 2518(3)(b), (d).

17      **6.**    As was the case with the July 17, 2009 wiretap, 09-38(D), law enforcement

18   sought to intercept the conversations of "**Rude Boy**," "**Boxer**," "**El Oso**" without

19   providing *any* factual basis for targeting their communications.  Once again, these

20   individuals were simply identified as target subjects and never again mentioned or

21   alluded to in the body of the affidavit.  The affidavit did even so much as describe their

22   suspected roles in the offenses under investigation.  Bates 727.  Law enforcement failed

23   to demonstrate any type of probable cause as to either of these individuals.  18 U.S.C. §

24   2518(3)(a), (b), (d).

25      **7.**    The affidavit advanced no new information about the following individuals,

26   as to whom there was no probable cause earlier and any information previously

27   developed was now stale:

28      • Cabezon

1     • Richard Castorena

2     • Teresa Castro

3     • Deborah Cortez

4     • Larry Cuevas

5     • J. Diaz

6     • L. Diaz

7     • Victor Felix

8     • Gilberto Gutierrez

9     • Jose Gutierrez

10    • Steven Hernandez

11    • Marlon Jiron

12    • Carmela LNU

13    • Mario LNU

14    • Fernando Lopez

15    • "M"

16    • Gabriel Allen Macias

17    • Kevin Martinez-Gonzalez (Chipo)[21]

18    • Sara Misquez

19    • Fernando Morales

20    • Paul Onsurez

21    • Patrick Orosco

22    • Octavio Pena

23    • Red Eye

24    • Roberto Sosa

25    • Armando Venegas

26    • Shawn Young

27

28    _____

[21.] As to Martinez-Gonzalez, the affiant once again reaffirmed that "to my knowledge, [Martinez-Gonzalea] has not been a source of supply for Alex since the beginning of the federal

8.     **Ray Perez**: The affiant offered no significant new information about Ray Perez.  The affiant reported that Navarro received a telephone call from "Kim" who said she was a friend of "Nancy, over on Nevada," who, in turn, "was good friends with the Perez" when Kim lived there.  Bates 761.  The affiant did not attempt to clarify whether Kim was referring to Ray Perez or Jessica Perez (Jiron's girlfriend).  Regardless, however, Ray Perez was still described only as "a former customer" and "a former narcotics distributor" and this isolated reference does not create probable cause that Perez was engaging in any target offenses where none existed before.  18 U.S.C. § 2518(3)(a).  Moreover, despite months and months of wiretapping, law enforcement had still utterly failed to provide any basis for inferring that Perez ever communicated over the target telephones let alone that he communicated over them regarding the target offenses.  18 U.S.C. § 2518(3)(b), (d).

9.     **Rebecca Estrada**: The only telephone communications the affiant said Estrada participated in were conversations where she was being victimized by other people.  Regardless of what she did for a living, law enforcement did not target her communications because they were trying to develop evidence that she was involved in illicit activities.  The affiant asserted that Estrada's only relevant phone communications were of her being victimized by someone else.  This does not establish probable cause of criminal activity on her part.  18 U.S.C. § 2518(a).  Although law enforcement may have been free to target the phone conversations of her victimizer and capture her conversations incidentally, there was a clear lack of probable cause that Estrada was commonly using the target telephones or discussing criminal activity therein.  Law enforcement should not have been allowed to target her conversations.  18 U.S.C. § 2518(3)(b), (d).

**Summary**: The affidavit failed to establish all three types of probable cause to justify wiretapping of defendants Juan Diaz,  Juan Gil, Marlon Jiron, Adolph Moraga, Fernando Morales, Raul Prieto, Michael Sanchez, Carlos Vasquez, and, overall, 37 of 53

investigation in February 2009," six months earlier.  Bates 740.

1  target subjects.

2

3  **IX.    The Shortcomings of Probable Cause were Prejudicial**

4         "Even when only a portion of a search warrant is invalid, the subject of the search

5  suffers a constitutional violation." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083

6  (9th Cir. 2011) (internal quotations omitted).  "[A] search or seizure of a person must be

7  supported by probable cause particularized with respect to that person.  This requirement

8  cannot be undercut or avoided by simply pointing to the fact that coincidentally there

9  exists probable cause to search or seize another." *Ybarra v. Illinois*, 444 U.S. 85, 91 100

10  S.Ct. 338, 62 L.Ed.2d 238 (1979)

11         The mere fact that a person is listed as a Target Subject enables agents to

12  rationalize listening to each intercepted conversation for a longer period of time than if

13  there were no probable cause for that person.  *United States v. Rivera*, 527 F.3d 891, 907

14  (9th Cir. 2008); *United States v. Torres*, 908 F.2d 1417, 1424 (9th Cir. 1990).

15         Evidence from the foregoing wiretaps, and evidence derived therefrom, should be

16  suppressed.

17

18  **X.    The Wiretaps Failed to Present a Full and Complete Statement of Probable**

19  **         Cause**

20         Wiretaps are different from other types of warrants.  A regular warrant can be

21  issued on a bare showing of probable cause.  With wiretaps, however, Congress

22  "intended to 'make doubly sure that the statutory authority [for wiretaps] be used with

23  restraint and only where the circumstances warrant the surreptitious interception of wire

24  and oral communications.'"  *United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1110 (9th

25  Cir. 2006), quoting *United States v. Giordano*, 416 U.S. 505, 515, 94 S.Ct. 1820, 40

26  L.Ed.2d 341 (1974).

27         Rather than permit issuance merely on a showing of probable cause, Congress

28  required that law enforcement inform the issuing court of "a full and complete statement

41

of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including [] details as to the particular offense that has been, is being, or is about to be committed," 18 U.S.C. § 2518(1)(b).

As to each of the wiretaps, the affiant averred "I have not set forth every fact known to this investigation" and the affidavit "does not contain all of the facts known to this investigation."  Bates 29 ¶ 14; Bates 30 ¶ 17.[22]  Such a confession and disclaimer is the antithesis of a "full and complete statement."

Indeed, the failure to state facts pertinent to probable cause for most of the target subjects is further corroboration that Officer Lavoie utterly failed to provide a "full and complete statement" of probable cause for the wiretaps.

CONCLUSION

For all the foregoing reasons, the motion should be granted.


Respectfully submitted,

KESTENBAUM EISNER & GORIN LLP


Dated: September 17, 2012          */S/ ALAN EISNER*_____

ALAN EISNER
Attorney for Defendant
JUAN GIL

---

[22.] Officer Lavoie made the same admissions in each extension of the original wiretap.  09-38(A) Bate 148-49 ¶¶ 15, 18; 09-38(B) Bates 295, 297 ¶¶ 17, 20; 09-38(C) Bates 417-18 ¶¶ 18, 21; 09-38(D) Bates 552-53 ¶¶ 22, 25; 09-38(E) Bates 737-38 ¶¶ 25, 28; 09-38(F) Bates 903-05 ¶¶ 27, 30.