ALAN EISNER, State Bar #127119
KESTENBAUM EISNER & GORIN LLP
14401 Sylvan Street, Suite 112
Van Nuys, CA 91401
Phone:        (818) 781-1570
Fax:          (818) 781-5033
Email:        ae@keglawyers.com

Attorney for Defendant
JUAN GIL

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>            Plaintiff,<br><br>    v.<br><br>ARMANDO BARAJAS, et al.,<br>JUAN GIL (2)<br>            Defendant. | Case No.:  2:10-CR-00351-ODW-02<br><br>**DEFENDANT JUAN GIL'S MOTION TO SUPPRESS EVIDENCE DERIVED FROM ORIGINAL WIRETAP AND EXTENSIONS (A) AND (B) ISSUED WITHOUT PROBABLE CAUSE**<br><br>Hearing Date: October 22, 2012<br>Hearing Time: 10:00 a.m.<br>Hon. Otis Wright II |

TO THE UNITED STATES ATTORNEY ANDRE BIROTTE AND ASSISTANT

UNITED STATES ATTORNEYS REEMA EL-AMAMY AND MICHAEL DORE and

all interested parties:

        PLEASE TAKE NOTICE that defendant Juan Gil, through counsel, hereby files

his motion to suppress evidence derived from wiretaps issued without probable cause.

                              Respectfully submitted,

                              KESTENBAUM EISNER & GORIN LLP


Dated: September 24, 2012          */S/ ALAN EISNER*_____

                              ALAN EISNER
                              Attorney for Defendant
                              JUAN GIL

1

## TABLE OF CONTENTS

2   STATEMENT OF FACTS ........................................................................................ 1

3
4   ARGUMENT ......................................................................................................... 3

5   I.   Law Enforcement Failed to Establish the Requisite Three Types of
     Probable Cause For Many of The Target Subjects ...................................... 3

6
7   II.  The Affidavit Supporting the February 2009 Wiretap 09-38 Failed to
     Establish All Three Types of Probable Cause for Each Target ................... 5
8         1.   Manuel Vega ...................................................................... 5
          2.   David Navarro .................................................................... 5
9         3.   Carmela "LNU" ................................................................. 6
          4.   "Cabezon" ......................................................................... 7
10        7.   Ray "LNU" ........................................................................ 9
          8.   Mario "LNU" ..................................................................... 9
11        9.   Richard "LNU" ................................................................. 9
          10.  Gabriel Macias. ............................................................... 10
12        12.  Patrick Orosco ................................................................ 11
13        Summary. ................................................................................... 12

14
15  III. The Affidavit Supporting the March 2009 Wiretap 09-38(A) Failed to
     Establish All Three Types of Probable Cause for Each Target ................. 12
16        1.   Carmela "LNU" ............................................................... 12
          2.   Cabezon ........................................................................... 13
17        3.   Larry Cuevas ................................................................... 13
          4.   Gabriel Macias. ............................................................... 13
18        5.   Paul Onsurez and Shawn Young ...................................... 14
          6.   Richard "LNU" ............................................................... 15
19        7.   Ray "LNU" ...................................................................... 15
          8.   Mario "LNU" ................................................................... 15
20        9.   Patrick Orosco ................................................................. 16
21        10.  Sara Misquez. .................................................................. 16
          11.  Juan Diaz. ........................................................................ 16
22        12.  Unidentified Male ............................................................ 17
23        Summary ..................................................................................... 18

24
25
26  IV.  The May 2009 Affidavit for Wiretap 09-38(B) Failed to Establish Probable
     Cause that Target Telephone #5 was Used By Navarro or Used for
27        Conversations about Illegal Activity .......................................................... 18

28

V.     The Affidavit Supporting the May 2009 Wiretap 09-38(B) Failed to
       Establish All Three Types of Probable Cause for Each Target ............................ 19
       1.     Richard Castorena, Larry Cuevas, Juan Diaz, Mario LNU, Gabriel
              Allen Macias, Paul Onsurez, Ray Perez........................................................ 19
       2.     Shawn Young. ..................................................................................... 20
       3.     Carmela .............................................................................................. 20
       4.     Venegas, Martinez-Gonzalez, Hernandez, L. Diaz.............................. 20
       5.     Misquez. ............................................................................................ 20
       6.     Jose LNU............................................................................................ 21
       7.     Cabezon ............................................................................................. 21
       8.     UM/SOS ............................................................................................ 22
       9.     Jose Gutierrez & Gilberto Gutierrez. ................................................. 22
       10.    Steve Hoyos........................................................................................ 22
       Summary ...................................................................................................... 22

VI.    The Shortcomings of Probable Cause were Prejudicial ........................................ 22

VII.   The Wiretaps Failed to Present a Full and Complete Statement of Probable
       Cause ....................................................................................................................... 23

CONCLUSION ................................................................................................................ 24

1

TABLE OF AUTHORITIES

**Cases**

*Aguilar v. Texas*, 378 U.S. 108 (1964) .......................................................... 6, 21

*Bravo v. City of Santa Maria*, 665 F.3d 1076 (9th Cir. 2011) ............................ 22

*Brinegar v. United States*, 338 U.S. 160 (1949).................................................... 4

*Carroll v. United States*, 267 U.S. 132 (1925) ..................................................... 4

*Dawson v. Delaware*, 503 U.S. 159 (1992)......................................................... 17

*Hodge v. Mountain States Tel. & Tel. Co.*, 555 F.2d 254 (9th Cir. 1977) ........... 6

*Illinois v. Gates*, 462 U.S. 213 (1983).......................................................*passim*

*Katz v. United States*, 389 U.S. 347 (1967) .......................................................... 3

*Miranda v. Arizona,* 384 U.S. 436 (1966)........................................................... 20

*Nathanson v. United States*, 290 U.S. 41 (1933)................................................... 5

*People v. Gardeley*, 14 Cal.4th 605 (1996) ........................................................ 17

*Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364 (2009) ................... 4, 5

*Sibron v. New York*, 392 U.S. 40 (1968) ...................................................... 11, 12

*United States v. Bishop*, 264 F.3d 919 (9th Cir. 2001) .......................................... 4

*United States v. Brown*, 951 F.2d 999 (9th Cir. 1991) ........................................ 11

*United States v. Chavez*, 533 F.2d 491 (1976) ...................................................... 5

*United States v. Giordano*, 416 U.S. 505 (1974) ................................................ 23

*United States v. Gonzalez, Inc.*, 412 F.3d 1102 (9th Cir. 2006)........................... 23

*United States v. Meling*, 47 F.3d 1546 (9th Cir. 1995) .......................................... 4

*United States v. Rivera*, 527 F.3d 891 (9th Cir. 2008)......................................... 22

*United States v. Torres*, 908 F.2d 1417 (9th Cir. 1990)....................................... 22

*United States v. United States Dist. Court*, 407 U.S. 297 (1972) .......................... 3

*Ybarra v. Illinois*, 444 U.S. 85 (1979)......................................................... 11, 22

**Constitution and Statutes**

18 U.S.C. § 1959 ................................................................................................. 17

18 U.S.C. § 1962 ................................................................................................. 17

18 U.S.C. § 2516 ................................................................................ 10, 14, 19

18 U.S.C. § 2518(1)(b) ................................................................................ 23

18 U.S.C. § 2518(3) ............................................................................. *passim*

U.S. CONST., amend. IV ................................................................................ 3

**MOTION TO SUPPRESS EVIDENCE DERIVED FROM WIRETAPS**

**ISSUED WITHOUT PROBABLE CAUSE**

Rather than undertake the basic investigative tasks necessary to demonstrate the need for a wiretap, the government just started its investigation by applying for a wiretap. By leap-frogging over rudimentary investigative tasks, for many of the individuals whose conversations law enforcement sought to eavesdrop upon, the wiretap applications (a) fail to establish probable cause that the individual was engaged in any criminal activity, (b) fail to establish probable cause that conversations concerning any criminal activity would occur over the telephone, or (c) fail to establish probable cause that the individual regularly used the targeted telephone. Law enforcement must establish *all three* types of probable cause before a wiretap may issue.

**STATEMENT OF FACTS**

In February 2009, the government sought the first in a series of wiretaps. Based on the affidavit of Ontario Police Officer Kris Lavoie, the wiretap application identified 18 specific living individuals, in addition to one dead person and "others known, unknown, or unidentified," whose conversations it wanted to intercept through the proposed wiretap. Bates 005. The proposed wiretap sought to intercept communications over two separate telephone lines, one allegedly used by Defendant Marco Antonio Torres-Cruz, whom the government identified only as "Alex," and allegedly suspected to be used by Torres-Cruz's alleged source for narcotics, a person enigmatically identified only as "UM" and "SOS". Bates 002-003.

The government claimed a two-fold investigative objective. The principal focus of the investigation was, ostensibly, "to identify members and associates of the Ontario Black Angels," which Officer Lavoie characterized as "criminal street gang," even though neither "Alex" nor the reputed "source" were suspected to be associated with the

1

purported "gang."  Bates 036.[1]

Secondarily, the government claimed to seek more information about "Alex's" narcotics trafficking.  Bates 036.

Insofar as the Black Angels aspect of the investigation was concerned, the government sought to target the communications of Manuel Vega, who Lavoie identified as "a known and admitted member of the Ontario Black Angels" but who, Lavoie acknowledged "was the victim of a homicide."  Bates 032, 044.[2]  The only other person targeted by the wiretap who was allegedly affiliated with the Black Angels was Defendant David Navarro.  Officer Lavoie hypothesized that "Navarro contacts Alex to collect extortion payments," Bates 032, but the only specific fact offered in support of this hypothesis was the existence of a single, isolated telephone conversation that occurred three months earlier, in November 2008, when Vega was still alive, that Officer Lavoie interpreted as indicating that "'David' assisted Vega by collecting extortion payments."  Bates 041.  Officer Lavoie hypothesized that "Navarro has taken over the responsibilities of collecting extortion payments" following Vega's death, Bates 044, but the affidavit contained no specific facts suggesting any basis for this assertion other than rank speculation.

The government's showing as to targets connected with "Alex" was no less asthenic.

Apart from the dead Vega, the government made *no showing whatsoever* of probable cause as to five of the Target Subjects.  For example, Larry Cuevas was

---

[1.] In October and November of 2008, local authorities established wiretaps on Torres-Cruz, claiming to focus only on investigating Torres-Cruz and those he dealt with.  The last state wiretap expired January 12, 2009.  After a one month gap, federal authorities began overseeing the case and added the Black Angels as their investigative focus.

[2.] Lavoie represented that Vega had been murdered in January 2008, a year earlier, Bates 032, 044, even though law enforcement clearly knew that Vega had been killed only a month before the wiretap application, Bates 2830-2910, and had been in communication with others in October 2008 and January 2009, more than 9 months to a year after his reported death.  Bates 040, 050, 159, 172, 308.  Vega was, in any event, still dead and unlikely to be communicating on any of the target telephones.

described only as "a *previous* customer and courier." Bates 034. The affiant clarified that Cuevas was "currently in custody." Bates 034. The affiant stated, in describing Target Subjects Patrick Orosco and Shawn Young, that law enforcement "believed" that each was a street level courier, Bates 034-035, but the affiant stated no further specific underlying facts from which the issuing judge could draw such a conclusion. Indeed, Onsurez and Young were not mentioned in the affidavit other than identifying them as Target Subjects whose phone conversations were to be intercepted by government agents. Ray Perez and "Mario LNU" were identified only as "customers" but, again *no facts* about any purchase or contacts were given from which a judge could infer that a seller-customer relationship existed.

## ARGUMENT

### I.    Law Enforcement Failed to Establish the Requisite Three Types of Probable Cause For Many of The Target Subjects

The Fourth Amendment regulates "not only the seizure of tangible items, but extends as well as to the recording of oral statements." *United States v. United States Dist. Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972)**Error! Bookmark not defined.**, quoting *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)**Error! Bookmark not defined.**. It quite clearly provides that "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const., amend. IV.

In order to constitute a lawful wiretap, 18 U.S.C. § 2518(3) similarly forbids judicial officers from granting wiretap orders without probable cause. Congress, in fact, required the government to demonstrate three different types of probable cause before a court could lawfully intercept otherwise-private telephone communications. Under 18 U.S.C. § 2518(3), a "judge may enter an ex parte order . . . authorizing or approving the interception of wire, oral, or electronic communications [only] . . . if the judge determines

on the basis of the facts submitted by the applicant that:

> "(a) there is probable cause for belief that [the] individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter.
> "(b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception . . . [and]
> "(d) there is probable cause for belief that the facilities [to be intercepted] . . . are leased to, listed in the name of, or commonly used by such person."

18 U.S.C. § 2518(3)(a), (b), (d)**Error! Bookmark not defined.**.  See also *United States v. Meling*, 47 F.3d 1546, 1552 (9th Cir. 1995).[3]

"Probable cause exists when there is a fair probability or substantial chance of criminal activity."  *United States v. Bishop*, 264 F.3d 919, 924 (9th Cir. 2001), citing *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).  Although "not readily, or even usefully, reduced to a neat set of legal rules," the existence of probable cause "turn[s] on the assessment of probabilities in particular factual contexts." *Gates*, 462 U.S. at 238.  To satisfy the constitutional minimum:

> the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information [must be] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed, and that evidence bearing on that offense will be found in the place to be searched.

*Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370, 129 S.Ct. 2633, 174 L.Ed.2d 354 (2009), quoting *Brinegar v. United States*, 338 U.S. 160, 175-176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), quoting *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

---

[3].  A district judge authorizing a wiretap must enter several statutorily-required findings of probable cause.  The judge must find probable cause to believe (1) that an individual is committing, has committed, or is about to commit specified offenses, including product tampering and obstruction of justice, 18 U.S.C. § 2518(3)(a); (2) that communications relevant to that offense will be intercepted through the wiretap, *id.* § 2518(3)(b); and (3) that the individual who is the focus of the wiretap investigation will use the tapped phone, *id.* § 2518(3)(d).

*Meling*, 47 F.3d at 1551-52.

Even in *Gates*, however, the Supreme Court reaffirmed that bare conclusions are insufficient. A "conclusory statement that gives the magistrate virtually no basis at all for making a judgment" fails to satisfy the probable cause standard required by the constitution. *Gates*, 462 U.S. at 239. Rather, an affidavit "must provide the magistrate with a substantial basis for determining the existence of probable cause." *Gates*, 462 U.S. at 239.[4] The Supreme Court emphasized:

> Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others. In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued.

*Gates*, 462 U.S. at 239.

## II. The Affidavit Supporting the February 2009 Wiretap 09-38 Failed to Establish All Three Types of Probable Cause for Each Target

**1.** **Manuel Vega**: The wiretap affidavit sought to intercept the conversations of a dead person, Manuel Vega. The defect in this is not that law enforcement did not have the assistance of a medium on their side, but that the agents executing the wiretap were instructed to eavesdrop upon conversations so they could learn the voices of the various wiretap targets. Bates 090-091. As a result, throughout the wiretap period but especially during the early stages of the interception, by adding superfluous targets to their wiretap, the monitoring agents could justify listening for a longer period of time for the dead person who never be on the phone. *United States v. Chavez*, 533 F.2d 491, 493-94 (1976).

**2.** **David Navarro**: Officer Lavoie offered the issuing judge no specific factual information "to warrant a man of reasonable caution in the belief that an offense

---

[4.] Thus, for example, "A sworn statement of an affiant that 'he has cause to suspect and does believe' . . . [certain facts exist] will not do." *Gates*, 462 U.S. at 239, citing *Nathanson v. United States*, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933). Similarly, "An officer's statement that '[a]ffiants have received reliable information from a credible person and do believe' that heroin is stored in a home, is likewise inadequate." *Gates*, 462 U.S. at 239, citing *Aguilar v. Texas*, 378

1   has been or is being committed," *Safford Unified School Dist.*, 557 U.S. at 370, let alone

2   that he was likely to use the phone during the interception period to further the

3   speculative hypothesized crimes, § 2518(b)(3)(b), (d).  The only fact about Navarro was

4   that, three months earlier, when Vega was still alive, Navarro had "assisted Vega" on one

5   isolated occasion, apparently at Vega's behest.  Bates 041.  Vega was now dead.  Officer

6   Lavoie provided no specific facts suggesting that Navarro ever had any other

7   communication or that he ever did so other than at Vega's request.  Although Officer

8   Lavoie speculated that Navarro had "taken over the responsibilities" of Vega, other than

9   this bald conclusion, the affidavit provided no facts to support that "bare conclusion."

10   The officer's conclusion is inadequate.  *Gates*, 462 U.S. at 239; 18 U.S.C. § 2518(3)(a).

11   There was a single communication by Navarro.  There was no fact stated

12   indicating that it was a criminal conversation.  Even if criminal, there was no fact stated

13   indicating that Navarro ever had a similar conversation with anyone at any later time.

14   There was no fact indicating that Navarro was currently engaging in any communications

15   over the telephone, let alone over either of the target telephones.  18 U.S.C. § 2518(3)(b),

16   (d).

17   Law enforcement apparently obtained a pen register or trap and trace device on

18   Alex's telephone.  "The pen register is a device used typically in the early stages of an

19   investigation to generate leads for further inquiry."  *Hodge v. Mountain States Tel. & Tel.

20   Co.*, 555 F.2d 254, 258 (9th Cir. 1977).  The pen register did not provide any leads to

21   implicate that Navarro w as communicating on either target telephone.

22   Devoid of evidence that Navarro was involved in any crime, that Navarro used the

23   telephone to communicate information about those hypothetical crimes, or that Navarro

24   had communicated over the target telephone at any time during the prior 3 months (let

25   alone did so on a regular basis), the affidavit failed on all three elements of probable

26   cause as to David Navarro.  18 U.S.C. § 2518(3)(a), (b), (d).

27

28

U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

**3.**    **Carmela "LNU"**: Stating that Carmela was Alex's wife, Officer Lavoie sought to intercept all of Carmela's communications with Alex.  Bates 035.  Officer Lavoie hypothesized that Carmela "assists" Alex in his drug dealing but suggested no specific facts to either support or explain that hypothesis.  Apart from her marital relationship with "Alex" and their cohabitation, Officer Lavoie offered no facts suggesting that Carmela had ever engaged in any illegal activity or ever communicated with Alex over the target telephone.  Was he, for example, asserting that Carmela's assistance consisted of cooking dinner for the couple, as a result of which Alex felt nourished and could carry on his alleged illegal activity?  The wiretap judge had no idea.  After describing her as Alex's wife, Officer Lavoie never again referenced Carmela in the affidavit, let alone suggested there was any basis for wiretapping the suspect's wife.

Devoid of facts establishing probable cause that Alex's wife was (a) engaged in criminal activity, (b) used the phone to communicate with her husband about illegal activities, and (c) regularly communicated with her husband over the target telephone, 18 U.S.C. § 2518(3)(a), (b), and (d), law enforcement was not legally authorized to expand the scope of their search to listen for her communications.

**4.**    **"Cabezon"**:  Cabezon was identified as Alex's brother-in-law and his communications were targeted on the hypothesis that, in some unidentified way, he "assists Alex with his narcotics distribution."  Bates 035.  Officer Lavoie said his conclusion was "based on intercepted calls" over Alex's phone, Bates 035, but did not identify who participated in the phone call (such as whether the inference was derived from statements made by Cabezon or made by others about Cabezon), what was said, when the phone call was placed, or whether the assumption was based on a single, isolated phone call or a series of phone calls.  The affidavit stated no other facts detailing what Cabezon's "assistance" supposedly consisted of (which might have been nothing more than providing a place for rest and relaxation on the weekends while Alex visited along with his wife), when it had occurred in the past, or how often it occurred.  The affidavit did not suggest that the person referred to as Cabezon had ever used either target

telephone nor provided any basis for believing that he would do so in the future. The affidavit made no further reference to Cabezon after stating that law enforcement wanted to listen in on Cabezon's conversations.

Having failed to identify any specific facts, Officer Lavoie's affidavit failed to establish probable cause that Cabezon was involved in any criminal activity. 18 U.S.C. § 2518(3)(a). Officer Lavoie's affidavit similarly failed to establish any basis for inferring that Cabezon would communicate about the hypothesized criminal activity over the phone, § 2518(3)(b), or that Cabezon ever used or had access to Alex's telephone, § 2518(3)(d).

**5. Larry Cuevas**: Larry Cuevas was described only as "a *previous* customer and courier." Bates 034. The affiant clarified that Cuevas was "currently in custody." Bates 034. By affirming his status as only a *previous* customer and courier, law enforcement implicitly acknowledged that any connection between Cuevas and the other Target Subjects was stale. Moreover, by confessing that Cuevas was "currently in custody," Officer Lavoie also simultaneously conceded that Cuevas was unlikely to able to make a call from or to either of the target telephones.[5] 18 U.S.C. § 2518(3)(a), (b), (d)

**6. Paul Onsurez** and **Shawn Young**: The affiant stated, in describing Target Subjects Paul Onsurez and Shawn Young, that law enforcement "believed" that each was a street level courier, Bates 034-035, but the affiant stated no further specific underlying facts from which the issuing judge could draw such a conclusion. Cf. *Gates*, 462 U.S. at 239. Indeed, Onsurez and Young were not mentioned in the affidavit other than identifying them as Target Subjects whose phone conversations were to be intercepted by government agents. There was no showing of probable cause that they were engaged in any of the target offenses, "commonly used" the targeted telephones, or were probably likely to communicate about the target offenses over the target telephones. 18 U.S.C. § 2518(3)(a), (b), (d).

---

[5.] Officer Lavoie affirmed that both target telephones were cellular telephones, Bates 002-003, 024-025, 053, while inmate phones cannot place calls to cellular telephones.

7.      **Ray "LNU"**: The affidavit identified Ray "LNU" only as a "customer,"[6] Bates 035, but, again *no facts* about any purchase or contacts were given from which a judge could infer that a seller-customer relationship existed.  Ray was additionally described as "a friend of Shawn Young" but the affidavit offered no facts suggesting that the relationship was a basis for inferring any criminal connection on Ray's part, especially after the affidavit provided no facts from which one could infer Young was engaged in any criminality.  18 U.S.C. § 2518(3)(a).  The affidavit stated no facts regarding Ray's use of any telephones, let alone the target telephones, let alone that he would communicate any information over the phone that was related to the investigation. 18 U.S.C. § 2518(3)(b), (d).

8.      **Mario "LNU"**:  Based on an unidentified telephone conversation between "Richard LNU" and Alex, Bates 051 ¶ 45.b, Officer Lavoie inferred that Mario was a "customer" of Richard's, Bates 034.  Devoid of any facts such as to what was said, by whom, or when, the wiretap judge was in no position to find that the officer's unexplained conclusion amounted to probable cause that Mario was engaging in illegal activity.  *Gates*, 462 U.S. at 239; 18 U.S.C. § 2518(3)(a).  The affidavit provided no information from which anyone could infer that Mario had access to any telephone, let alone either of the target telephones, or ever spoke to Alex.  18 U.S.C. § 2518(3)(b), (d).

9.      **Richard "LNU"**: Officer Lavoie identified Richard LNU as "a *former* customer" of Alex's."  Bates 034.  Officer Lavoie stated that Richard worked with someone (Steve Hoyos) who worked with Alex.  Bates 034.  Officer Lavoie identified only a single instance, January 5, 2009, five weeks before the February 13, 2009 wiretap application, where Richard used a telephone.  According to Lavoie, Richard had been the victim of a robbery, and Alex called Richard and asked him what happened.  Bates 050-51.  Officer Lavoie identified no other instance, during the entire history of the investigation, where Richard supposedly spoke on or had access to Alex's telephone.

---

[6.] Ray was later identified in the May 2009 wiretap as Ray Perez who was, by that time, "a former customer."  Bates 300 ¶ 21.m.

The only facts offered by the affiant was that Richard was the victim of a crime, not a criminal himself.  *Cf.* 18 U.S.C. § 2518(3)(a).  The facts did not demonstrate that Richard "commonly used" the target telephone let alone spoke about the target offenses over the telephone.  18 U.S.C. § 2518(3)(b), (d).

**10.   Gabriel Macias:** Similar to Onsurez and Young, Officer Lavoie hypothesized that Macias was a "street level courier" for Alex.  Bates 035.  With Macias, however, Officer Lavoie added that, in August 2008, seven months before the wiretap application was being filed, Macias had been stopped by police and "suspected of being under the influence of heroin" and, not surprisingly for a user, also found in possession of heroin and cocaine.  Bates 082-83.  Police discovered some undescribed "handwritten notes" during a search of Macias's car.  Bates 083.  The affidavit did not provide any information about the amount of drugs possessed or nature of their packaging suggesting anything more than that Macias was a casual user or a drug addict.[7]  The facts did not demonstrate probable cause of a crime for which wiretapping was authorized.  18 U.S.C. § 2518(3)(a).

Macias had, on that one occasion in August 2008, seven months before the wiretap February 2009 application, apparently used his telephone to speak with Hoyos, a person who spoke with Alex.  Bates 083.  There was no indication Macias had any contact with Alex or the target telephones and, thus, a lack of probable cause that he would be intercepted talking about the target offenses on those phones.  18 U.S.C. § 2518(3)(b), (d).

**11.   Sara Misquez**:  Sara Misquez was not alleged to have any connection with the Black Angels.  Officer Lavoie described Misquez as "a *previous* courier for Alex," Bates 033, a status not consistent with probable cause for believing that she was participating in the target offenses.  18 U.S.C. § 2518(3)(a).

---

[7.] That Macias may have been guilty of driving under the influence was (a) not a crime for which wiretapping is authorized, 18 U.S.C. § 2516, and (b) not a crime for which it is reasonable to assume that wiretapping would be highly effective to capture evidence, 18 U.S.C. § 2518(3)(b).

1     The only evidence that Misquez had any contact with "Alex" was the one time

2  when she happened to be at the same Carl's Jr. fast food restaurant at the same time as

3  Alex in July 2008.  A month later, in August 2008, when surveillance was tracking Alex

4  ("Torres-Cruz"), he drove by Misquez's house on one occasion on his way to another

5  location.  Bates 066-67.  Misquez had been arrested in March 2008, Bates 038, nearly a

6  year before the wiretap application, had subsequently pled guilty, and was still "in

7  custody" at the time of the wiretap application, Bates 039.  An informer trying to work

8  off a new criminal case told law enforcement Misquez had *previously* been connected

9  with Alex in June 2008, Bates 036-37, about three months after she was arrested and still

10  nine months before the wiretap application.  Officer Lavoie did not suggest that Misquez

11  ever spoke to Alex on Alex's telephone (TT#1) or over *any* telephone.  These facts failed

12  to establish probable cause that she would be communicating with Alex over the target

13  telephone regarding the target offenses.  18 U.S.C. § 2518(3)(b), (d).

14     **12.   Patrick Orosco**: Although presenting facts suggesting that Orosco was in

15  regular telephone contact with Alex, Officer Lavoie provided no facts from which the

16  wiretap judge could reasonably conclude that Orosco was involved in illegal activity or

17  used the phone for illegal activity.  Officer Lavoie hypothesized that Orosco was

18  "believed to be a narcotics courier for Alex[]" but provided no facts to support that

19  conclusion.  Bates 034.

20     Here, law enforcement tendered only the fact that Alex may have been in criminal

21  activity and that Orosco spoke to Alex.  But "mere guilt by association . . . is insufficient

22  probable cause to support a search warrant."  *United States v. Brown*, 951 F.2d 999, 1004

23  (9th Cir. 1991), citing *Ybarra v. Illinois*, 444 U.S. at 91.  In similar circumstances, the

24  Supreme Court declared "It must be emphasized that [law enforcement] was completely

25  ignorant regarding the content of these conversations" when affirming an absence of

26  probable cause to search.  *Sibron v. New York*, 392 U.S. 40, 62, 88 S.Ct. 1889, 20

27  L.Ed.2d 917 (1968).  "The inference that persons who talk to narcotics [dealers] are

28  engaged in the criminal traffic in narcotics is simply not the sort of reasonable inference

required to support an intrusion by the police upon an individual's personal security." *Id.*, at 62.

Devoid of facts establishing probable cause that (a) Orosco was engaged in criminal activity and (b) Orosco was conversing about that criminal activity over the telephone, law enforcement was not permitted to expand the scope of their search to listen for Orosco's communications.  18 U.S.C. § 2518(3)(a), (b).

**Summary**: Law enforcement failed to establish any one of three required showings of probable cause for each of the only two individuals alleged to provide the Black Angels aspect of the investigation.  There was an inadequate showing of one or more of the required probable cause showings as to at least 11 of the 17 individuals law enforcement sought to intercept regarding the investigation of Alex.

## III.   The Affidavit Supporting the March 2009 Wiretap 09-38(A) Failed to Establish All Three Types of Probable Cause for Each Target

**1.**     **Carmela "LNU"**:  As of the March 2009 wiretap, Officer Lavoie could provide no more information about Carmela's hypothesized illegal activity other than that she was Alex's wife, she lived with him, and, in some unspecified way, Officer Lavoie "believes [she] assists" her husband.  Bates 154.  Apart from her marital and cohabitation relationship with Alex, her name was never again mentioned at any point in the affidavit.

Not only did law enforcement fail to establish probable cause to intercept Carmela's conversations based on the minimal facts provided in the first affidavit, but, after an entire month of wiretapping, law enforcement was able to say no more about Carmela than they had reported over a month earlier.  She, apparently, was not on the phone and, if she was, was not talking about any criminal activity.  Whatever could be said for the effete probable cause showing in 09-38, law enforcement had utterly failed to demonstrate a reasonable basis for eavesdropping on Carmela's telephone conversations in March 2009.  There was no probable cause to demonstrate her involvement in any target offense, her use of the target telephones, or her discussion of any of the target

12

1    offenses.  18 U.S.C. § 2518(3)(a), (b), (d).

2        **2.    Cabezon**:  The March 2009 affidavit added no new information about

3    Cabezon.  Officer Lavoie repeated his assumption from the February 2009 affidavit that

4    he presumed that based on previously intercepted calls, he "believe[d]" that Cabezon

5    (Alex's brother-in-law) somehow assisted Alex in some undefined way based on an

6    unidentified conversation that was intercepted at some unknown time between

7    undisclosed people, the contents of which (or even a summary thereof) was never

8    disclosed to the wiretap judge.  Bates 154.  There was no evidence that, after an entire

9    month of wiretapping, Cabezon was ever intercepted over any of the target telephones

10   speaking about anything, let alone speaking about any criminal activity.  In fact, the

11   affidavit made no further reference to Cabezon after stating that law enforcement wanted

12   to listen in on Cabezon's conversations.

13       There was no better showing of probable cause that Cabezon was involved in any

14   criminal activity, that he was likely to talk about such activity over the telephone, or that

15   he ever communicated with anyone over the targeted telephones.  18 U.S.C. § 2518(3)(a),

16   (b), (d).

17       **3.    Larry Cuevas**: Officer Lavoie said no more than he stated in the February

18   2009 affidavit:  that Cuevas "was a *previous* customer and courier" of Alex's and that, no

19   different than in February, Cuevas was still "in custody."  Bates 152.  Officer Lavoie did

20   not suggest that, with the benefit of an entire month of wiretapping, there was any reason

21   to believe that Cuevas was any more likely to be intercepted with any additional

22   wiretapping when he had not been intercepted during the first interception period.  There

23   was no better showing of probable cause that Cuevas was involved in any criminal

24   activity, that he was likely to talk about such activity over the telephone, or that he ever

25   communicated with anyone over the targeted telephones.  18 U.S.C. § 2518(3)(a), (b),

26   (d).

27       **4.    Gabriel Macias**: In support of his request to continue seeking to intercept

28   Macias's conversation Officer Lavoie repeated the same information from August 2008

13

that was inadequate for a wiretap in February 2009.[8]  Not only was that information insufficient to establish probable cause in February 2009 that Macias was engaged in ongoing criminal activity, was likely to use the target telephone, or communicated about criminal activity over any telephone, but all that information was now another month older and less informative as to Macias's current activities.  In addition to being inadequate in the first place and now stale, after an entire month of additional wiretapping, law enforcement failed to encounter a single instance where Macias was intercepted speaking on any of the target telephones, let alone speaking about any criminal activity.

Having failed to establish probable cause that Macias was still engaged in criminal activity for which wiretapping would be authorized, 18 U.S.C. § 2516, 2518(3)(a), that Macias ever communicated over the target telephones, § 2518(3)(d), or was likely to talk about those alleged activities over any telephone, § 2518(3)(b), the government had no right to intercept Macias's conversations.

**5.**     **Paul Onsurez** and **Shawn Young**: Officer Lavoie offered no new information to justify the continued wiretapping of Paul Onsurez or Shawn Young.[9]  Just like the previous application, Officer Lavoie never even mentioned Onsurez or Young in the remainder of the affidavit after stating that they were among the individuals whose conversations the government wanted to intercept.

In addition to the fact that no additional information was provided about Onsurez or Young is the fact that, after an additional month of wiretapping, neither Onsurez nor Young were ever caught by government agents engaging in any illegal activity, talking on the target telephones, or talking on any phone about illegal activity.

---

[8].  Macias was believed to be under the influence of heroin when detained during a traffic stop, was in possession of heroin and cocaine, had some paper with nondescript "handwritten notes" on them, and, back in August 2008, spoke on the phone with someone (Hoyos) who Alex knew. Bates 209-10.  See also Bates 082-83.

[9].  The original application provided only the "belie[f]," unsupported by any specific facts, that Onsurez and Young were couriers for Alex, Bates 034-035, conclusions repeated in the March 2009 application, Bates 153-54, without any further elaboration.

Having failed to establish probable cause that Onsurez or Young were engaged in criminal activity, that either ever used or communicated over the target telephones, or was likely to talk about the hypothesized crimes over any telephone, the government had no right to attempt to intercept their communications.  18 U.S.C. § 2518(3)(a), (b), (d).

**6.    Richard "LNU"**: Officer Lavoie offered no new information to justify the ongoing attempt to intercept telephone conversations with Richard LNU.[10]  The information that had been presented was now another month older and out of date and no new information had been learned about him.  There was no evidence that Richard had been intercepted during an entire month of wiretapping activity, that his name had even been mentioned during any intercepted phone call, or that he was any more likely to have access to any of the targeted telephones in the future.

**7.    Ray "LNU"**: Officer Lavoie offered no new information to justify the continued attempt to intercept Ray's telephone conversations.[11]  There were still no facts regarding Ray's use of any telephones, let alone the target telephones, let alone that he would communicate any information over the phone that was related to the investigation.  18 U.S.C. § 2518(3)(a), (b), (d).

**8.    Mario "LNU"**:  Officer Lavoie offered no new information to justify a continued effort to intercept conversations with "Mario."[12]  After an entire month of wiretapping, no conversation of Mario's was intercepted.  No mention was made of Mario.  Law enforcement apparently knew no more about Mario in March 2009 than they had in February 2009 or, for that matter, in January 2009.  There was a lack of probable

---

[10.] No different than in the February affidavit, he was idenitifed as "a *former* customer" of Alex's," and someone who knew someone who knew Alex.  Bates 153.  The only telephone conversation that Richard had been involved in was when he called to report he had been robbed, Bates 172, a singular instance that was now 2½ months in the past.

[11.] As before, Ray was assumed to be a "customer" but the affidavit was devoid of any facts from which the judge could reach that conclusion.  Bates 153.  He was also identified as "a friend of Shawn Young," with no further information that might explain why this fact would give rise to probable cause to conclude he was engaged in illegal activity.  Bates 153.

[12.] The only fact provided was that Mario was a customer of someone else who was connected to Alex, but no information that Mario ever had any contact or communication with Alex or

1    cause that Mario was actually involved in the target offenses or was likely to

2    communicate about them over the target telephones during the forthcoming interception

3    period.  18 U.S.C. § 2518(3)(a), (b), (d).

4        **9.    Patrick Orosco**:  Other than affirming that Orosco continued to be in

5    regular telephone contact with Alex, Bates 177, the March 2009 affidavit presented no

6    new fact that tended to suggest any illegal activity by Orosco.[13]  Given the ongoing

7    contact between Orosco and Alex and the ongoing interceptions of Alex's calls, the

8    affiant's failure to suggest that law enforcement ever intercepted Orosco speaking to Alex

9    about any criminal activity during the entire month of prior wiretapping is striking

10   evidence that no probable cause existed to intercept Orosco's conversations.  18 U.S.C. §

11   2518(a), (b).

12       **10.    Sara Misquez**:  Officer Lavoie suggested no new fact regarding Sara

13   Misquez tending to confirm any ongoing criminal activity or communications over the

14   target telephones.  This is not surprising since, like Cuevas, she was identified as a target

15   subject even though she was still "presently in custody."  Bates 151.  Officer Lavoie did

16   not suggest that there had been any change in her status or relationship to Alex as

17   anything other than "a *previous* courier for Alex."  Bates 151.  Officer Lavoie did not

18   suggest that Misquez had been intercepted communicating over the target telephones at

19   any time during the entire month of additional wiretapping nor identify any facts

20   suggesting there was any basis for anticipating any communication by her over the target

21   telephones at any time in the future.  The affidavit failed to establish probable cause that

22   Misquez was involved in the target offenses, was likely to speak about the target

23   offenses, or was communicating over the target telephones.  18 U.S.C. § 2518(3)(a), (b),

24   (d).

25       **11.    Juan Diaz:**  Officer Lavoie's affidavit established only that Diaz spoke with

26   Navarro about twice a day over Navarro's phone and that, like Navarro, Diaz was a

27

28   _____

     anyone else over the targeted telephones.  Bates 153, 173.

     [13]. Officer Lavoie hypothesized, as he did in February, that Orosco was "believed to be a

1    member of the Black Angels.  Bates 154, 182-83.  Officer Lavoie "believe[d]" that

2    Diaz's conversations related to "criminal activity of the Ontario Black Angeles" but

3    offered no facts indicating that Diaz participated in any such alleged criminal activity,

4    had any basis for knowing about the criminal activity, or any foundation from which one

5    could reasonably infer that Diaz would be talking about these matters.

6         Diaz's alleged membership in the Black Angels was an insufficient demonstration

7    of probable cause of any criminal activity.  Merely being a member of an organization

8    that law enforcement characterized as a "gang" is not a crime under California law,

9    *People v. Gardeley*, 14 Cal.4th 605, 623, 59 Cal.Rptr.2d 356, 927 P.2d 713 (1996), or

10   under federal law, *cf.* 18 U.S.C. § 1959, 1962 (criminalizing violent crimes in aid of

11   racketeering and controlling an organization through a pattern of racketeering).

12   Moreover, "the First Amendment protects an individual's right to join groups and

13   associate with others."  *Dawson v. Delaware*, 503 U.S. 159, 163, 112 S.Ct. 1093, 117

14   L.Ed.2d 309 (1992).  Officer Lavoie did not submit any facts indicating that Diaz himself

15   was participating in any criminal activity, was aware of any criminal activity, or spoke

16   with Navarro about any criminal activity.

17        Devoid of any facts demonstrating that Diaz was engaged in criminal activity, §

18   2518(3)(a), and communicated about criminal activity overt the phone, § 2518(3)(b), the

19   affidavit was devoid of probable cause to expand the scope of the search to listen in on

20   Diaz's conversations.

21        **12.    Unidentified Male**: Law enforcement added an additional pseudonymous

22   individual, "UM" as a proposed target subject.  Law enforcement's reasons for targeting

23   "UM" is mysterious, unless the purpose was to add a generic descriptor enabling

24   monitoring agents to listen in longer for every male's telephone calls on the target

25   telephones.  UM was hypothesized to be a person from whom Alex purchased narcotics

26   of an unknown variety.  More curiously, every fact Officer Lavoie mentioned about UM

27   not only pre-dated the March 2009 wiretap application by 2 to 6 months, but pre-dated

28

narcotics courier for Alex[]" but still provided no facts to support that conclusion.  Bates 152.

the February 2009 wiretap application.  Bates 160-62, 198-205.  If, after an entire month of wiretapping, the only facts law enforcement could muster regarding an initial attempt to intercept "UM" were facts known long before wiretapping started, and wiretapping had not contributed one iota to law enforcement's information base about UM, the justification for seeking to intercept UM's conversations was quite weak.  18 U.S.C. § 2518(b), (d).

**Summary**: The affidavit failed to establish all three required types of probable cause for at least 13 of the 19 individuals who monitoring agents would be listening for during their electronic interception, including defendant Juan Diaz.

## IV.     The May 2009 Affidavit for Wiretap 09-38(B) Failed to Establish Probable Cause that Target Telephone #5 was Used By Navarro or Used for Conversations about Illegal Activity

Agent Lavoie sought to target the communications on Target Telephone #5 on the ostensible ground that the phone was being used by Navarro to conduct illegal activity. Agent Lavoie provided no facts justifying his speculation on either point that could support a finding of probable cause.

Agent Lavoie acknowledged that Target Telephone #5 was not registered to David Navarro and was not registered to Navarro's address.  The agent did not offer any information that the address to which the phone was registered was in any way associated with Navarro.  Bates 291.  Whatever speculation agent Lavoie might have offered about Target Telephone #5, he ignored that David Navarro had a history of using a phone registered in his own name and registered to his home address.  Bates 289-90.

The purported basis for probable cause that Navarro used Target Telephone #5 was pure speculation.  Agent Lavoie said that a separate wiretap investigation suggested that Alfredo Rodriguez, who was a suspected drug supplier, spoke on the phone with a person named Jose LNU about Jose's desire to purchase cars, which agents speculated might have been code for drug dealing.  Separate and apart any communications with

Rodriguez, Agent Lavoie noted that Jose LNU used the same phone to talk to Rodrigues that was also occasionally used to call Target Telephone #5.  Bate 327.  Agent Lavoie had no basis for inferring that it was Jose calling Target Telephone #5, that the calls to Target Telephone #5 related to any activity that was subject to electronic interception under 18 U.S.C. § 2516, or that any such communication was with David Navarro.

**V.      The Affidavit Supporting the May 2009 Wiretap 09-38(B) Failed to Establish All Three Types of Probable Cause for Each Target**

1.     The May 2009 wiretap identified the following individuals as target subjects but included absolutely no facts about them to establish (a) probable cause that they are committed or about to commit an offense subject to federal wiretapping, (b) probable cause that communications regarding that offense would be intercepted by wiretapping, or (c) probable cause that the phone being targeted was "leased to, listed in the name of, or commonly used by such person."  18 U.S.C. § 2516(3)(a), (b), (d):

> • Richard Castorena
>
> • Larry Cuevas
>
> • Juan Diaz
>
> • Mario LNU
>
> • Gabriel Allen Macias
>
> • Paul Onsurez
>
> • Ray Perez

**2.** **Shawn Young**:  The information about Shawn Young was no more inculpatory than in previous applications, simply his friendship with Ray Perez (as to whom no probable cause was shown) and the amorphous unsubstantiated "belief" that, at some unspecified time, he "has acted as a . . . courier for Alex[.]"  Bates 300-01.

**3.** **Carmela**:  The only information about Carmela, beyond the fact that she was married to Alex, was that she may have had a bank account.  Bates 337.

**4.** **Venegas, Martinez-Gonzalez, Hernandez, L. Diaz**:  Agent Lavoie offered no information about Armando Venegas, Kevin Alejandro Martinez-Gonzalez, Steven Hernandez, or Lucio Diaz beyond listing them as target subjects.[14]  The most recent information about each of these individuals was isolated incidents dating back to November 2008, six months before Wiretap 09-38(B) was being sought in May 2009.[15]  Even though each had been the target of two state and two federal wiretaps since then, no information was alleged to exist that would suggest any of them had any further communication with Alex about hypothesized illegal activity or anyone else targeted on the investigation.  Bates 169-70.  There was a dearth of facts not only establishing probable cause of illegal activity but also communication about the target offenses over the target telephones.  18 U.S.C. § 2518(3)(a), (b), (d).

**5.** **Misquez**:  The agent gave no information about Misquez more recent than August 2008, other than noting that Misquez was "presently in custody," as she had been for the past 9 months.  There remained no evidence that Misquez was participating in the

---

[14.] The only information about these four was in *prior* affidavits.  In the March 2009 application, the most recent information about Diaz, Venegas and Hernandez were isolated telephone calls on November 14, 26 and 28, respectively.  Bates 164, 169-70, 164-65.  The most recent information about Martinez-Gonzalez was that he had been subjected to a traffic stop on November 20, 2008 after which he waived *Miranda* rights, said he wanted to answer questions and was eventually released without charges on the ground that there was insufficient evidence. Bates 166-67.

[15.] Starting in the next wiretap application, the affiant would concede that Martinez-Gonzalez "has not been a source of supply for Alex since the beginning of the federal investigation in February 2009."  Bates 555, 741.

target offenses or that she was communicating about them over the target telephones.  18 U.S.C. § 2518(a), (b), (d).

**6.** **Jose LNU**:  Agent Lavoie did not identify any specific facts stating purporting to indicate that Jose LNU was involved in illegal activity of any sort.  Although reporting that a Jose Silba and Alfredo Rodriguez were the targets of a separate and entirely independent wiretap relating to a completely different investigation.  Bates 347 ¶ 3.f, the affiant stated no facts from which the wiretap judge could independently conclude this was the same Jose LNU let alone that this Jose was involved in illegal activity.  18 U.S.C. § 2518(3)(a).  The only purported corroboration was a single, isolated telephone call between Rodriguez and Jose that took place 6 weeks before the new wiretap application.  Bates 327-28.  There was no indication that any further contact occurred before or in the 6 weeks after that conversation, leaving to pure speculation the hypothesis that Jose would communicate over the target telephone in the upcoming one-month wiretap period.  18 U.S.C. § 2518(b), (d).

**7.** **Cabezon**: Agent Lavoie reported that, a week before the May 1, 2009 wiretap application, 09-38(B), an informer told another officer that a person named "Robert" "drives vehicles also used by Alex."  Bates 333-34.  Agent Lavoie further hypothesized, based on foundation never elucidated, "I believe that 'Robert' is Target Subject Cabezon."  Bates 334.  In addition to the fact that there is absolutely no factual foundation for the assumption (and assertion) that Cabezon and Robert are one and the same person, the wiretap judge was provided with absolutely no information from which to reliably assess whether the informer was credible or reliable.  *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).  Indeed, Agent Lavoie's only comments about this informer was his observation that he "did not recognize any of the telephone numbers" on the informer's phone "as belonging to individuals that have communicated with Alex," that "this confidential has limited information" and that Agent Lavoie "was unable to corroborate the information this confidential informant provided."  Bates 334.

1    There was no probable cause that Cabezon was involved in the target offenses.  18 U.S.C.

2    § 2518(3)(a).

3         **8.      UM/SOS**: Although suspecting that a "UM" had previously worked with

4    Alex, Agent Lavoie advised the wiretap judge that "UM/SOS may have recently been

5    arrested and deported to Mexico."  Bates 302.  Agent Lavoie provided no basis for

6    inferring that there was any continued communication between the two after "UM's"

7    arrest, let alone since his deportation.  18 U.S.C. § 2518(3)(a), (b), (d).

8         **9.      Jose Gutierrez & Gilberto Gutierrez:** Jose and Gilberto Gutierrez were

9    subjected to a traffic stop on March 31, 2009, a month before the wiretap application 09-

10   38(B) on May 1, 2009.  After a consensual search revealed no contraband, both willingly

11   spoke to police after waiving their *Miranda* rights.  Gilberto was released based on

12   finding insufficient evidence to arrest and Jose was taken into custody on an immigration

13   hold.  Bates 317.  These facts fall far short of probable cause that they were involved in

14   the target offenses.  18 U.S.C. § 2518(a).

15        **10.     Steve Hoyos**: Hoyos was arrested on March 21, 2009, nearly 6 weeks

16   before Agent Lavoie applied for the 09-38(B) wiretap on May 1, 2009.  Bates 313-14,

17   334-36.  Hoyos was still in custody when the May 1, 2009 wiretap was sought.

18   Regardless of any previous misconduct, there was no showing of probable cause that

19   Hoyos would be communicating over the target telephones to talk about the target

20   offenses, especially while being held in custody.  18 U.S.C. § 2518(3)(b), (d).

21        **Summary:**  Agent Lavoie provided no information suggesting that *any* of the

22   foregoing individuals was "commonly used" – or was likely to use in the future – any of

23   the target telephones.  18 U.S.C. § 2518(3)(b), (d).  The affiant failed to establish all three

24   elements of probable cause to intercept the electronic communications of defendants Juan

25   Diaz and Santacruz Silva (a.k.a. Jose LNU) and, overall, 20 of the 25 target subjects.

26   **VI.    The Shortcomings of Probable Cause were Prejudicial**

27        "Even when only a portion of a search warrant is invalid, the subject of the search

28   suffers a constitutional violation."  *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083

1   (9th Cir. 2011) (internal quotations omitted).  "[A] search or seizure of a person must be

2   supported by probable cause particularized with respect to that person.  This requirement

3   cannot be undercut or avoided by simply pointing to the fact that coincidentally there

4   exists probable cause to search or seize another."  *Ybarra v. Illinois*, 444 U.S. 85, 91 100

5   S.Ct. 338, 62 L.Ed.2d 238 (1979)

6        The mere fact that a person is listed as a Target Subject enables agents to

7   rationalize listening to each intercepted conversation for a longer period of time than if

8   there were no probable cause for that person.  *United States v. Rivera*, 527 F.3d 891, 907

9   (9th Cir. 2008); *United States v. Torres*, 908 F.2d 1417, 1424 (9th Cir. 1990).

10       Evidence from the foregoing wiretaps, and evidence derived therefrom, should be

11  suppressed.

12

13  **VII.   The Wiretaps Failed to Present a Full and Complete Statement of Probable**

14  **Cause**

15       Wiretaps are different from other types of warrants.  A regular warrant can be

16  issued on a bare showing of probable cause.  With wiretaps, however, Congress

17  "intended to 'make doubly sure that the statutory authority [for wiretaps] be used with

18  restraint and only where the circumstances warrant the surreptitious interception of wire

19  and oral communications.'"  *United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1110 (9th

20  Cir. 2006), quoting *United States v. Giordano*, 416 U.S. 505, 515, 94 S.Ct. 1820, 40

21  L.Ed.2d 341 (1974).

22       Rather than permit issuance merely on a showing of probable cause, Congress

23  required that law enforcement inform the issuing court of "a full and complete statement

24  of the facts and circumstances relied upon by the applicant, to justify his belief that an

25  order should be issued, including [] details as to the particular offense that has been, is

26  being, or is about to be committed," 18 U.S.C. § 2518(1)(b).

27       As to each of the wiretaps, the affiant averred "I have not set forth every fact

28  known to this investigation" and the affidavit "does not contain all of the facts known to

1  this investigation."  Bates 29 ¶ 14; Bates 30 ¶ 17.[16]  Such a confession and disclaimer is

2  the antithesis of a "full and complete statement."

3      Indeed, the failure to state facts pertinent to probable cause for most of the target

4  subjects is further corroboration that Officer Lavoie utterly failed to provide a "full and

5  complete statement" of probable cause for the wiretaps.

6

7                              **CONCLUSION**

8      For all the foregoing reasons, the motion should be granted.

9

10                         Respectfully submitted,

11                         KESTENBAUM EISNER & GORIN LLP

12

13  Dated: September 24, 2012        */S/ ALAN EISNER*

14                         ALAN EISNER
                           Attorney for Defendant
15                         JUAN GIL

16

17

18

19

20

21

22

23

24

25

26  _____

27  [16.] Officer Lavoie made the same admissions in each extension of the original wiretap.  09-
    38(A) Bate 148-49 ¶¶ 15, 18; 09-38(B) Bates 295, 297 ¶¶ 17, 20; 09-38(C) Bates 417-18 ¶¶ 18,
28  21; 09-38(D) Bates 552-53 ¶¶ 22, 25; 09-38(E) Bates 737-38 ¶¶ 25, 28; 09-38(F) Bates 903-05
    ¶¶ 27, 30.

                                    24